TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00235-CV







Republic Western Insurance Company; U-Haul Co. of Texas, Inc.;

and U-Haul International, Inc., Appellants


v.



State of Texas and Dan Morales, Attorney General, Individually

and in his Official Capacity, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 97-09374, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING 






 This is an interlocutory appeal from an order granting a temporary injunction. 
Appellants U-Haul of Texas, Inc. ("U-Haul") and Republic Western Insurance Company brought
a declaratory judgment action against appellees, the State of Texas and Dan Morales, Attorney
General, individually and in his official capacity (collectively "the State"). Appellants sought a
declaration that they were not acting in violation of article 1.14-1 of the Texas Insurance Code by
offering various moving-related insurance packages to U-Haul's customers. The State
counterclaimed against U-Haul and Republic Western and filed a third-party action against
appellant U-Haul International, Inc. ("UHI"), seeking to enjoin U-Haul's practice of selling these
packages to its customers. The trial court issued a temporary injunction against appellants, who
now seek review of that order. We will affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

 Since 1962, U-Haul of Texas has been in the business of renting self-moving
equipment, including cargo trucks, trailers, and trailer hitches, as well as self-storage space. 
U-Haul offers its rental customers three "Safe Protection" insurance packages: "Safemove,"
"Safetow," and "Safestor." These packages apply respectively to the rental of moving equipment,
towing equipment, and storage spaces. Safemove and Safetow consist of a collision damage
waiver ("CDW") (1) and limited additional-insured protection for cargo damage, (2) medical expense,
and accidental death. (3) Safestor provides additional-insured protection against various dangers
posed to items while stored in U-Haul storage facilities. (4)

 The insurance component for all three products is underwritten by appellant
Republic Western, an insurance company licensed and authorized to write insurance in Texas. (5) 
For many years, Republic Western has issued a master insurance policy to U-Haul, allowing
U-Haul to add its customers as additional insureds. When a U-Haul customer decides to purchase
insurance, she initials the rental contract set out on the back of the rental agreement and pays
U-Haul the applicable premium. The customer's payment goes solely to Republic Western. UHI
assists U-Haul in marketing the packages to U-Haul's customers by providing counter-top writing
mats and brochures that are displayed at all U-Haul centers.

 After investigating U-Haul and Republic Western in July 1997, the Attorney
General's office sent a letter demanding that U-Haul representatives "with settlement authority"
appear at a meeting with personnel from the Attorney General's office and the Texas Department
of Insurance to "resolve matters of potential litigation involving trade and insurance practices in
Texas." The parties met but were unable to reach a settlement. Later, the Attorney General's
office issued separate Civil Investigative Demands ("CIDs") to U-Haul and Republic Western. 
Those appellants responded by filing a declaratory judgment action against the State, requesting
a declaration that their activities did not violate the Insurance Code. The State counterclaimed,
seeking a temporary injunction against U-Haul and Republic Western and adding a third party
action against UHI.

 Following the hearing on the State's application for a temporary injunction, the trial
court found that U-Haul, UHI, and Republic Western were each engaged in the unauthorized
business of insurance in violation of article 1.14-1 of the Texas Insurance Code. Tex. Ins. Code
Ann. art. 1.14-1 (West Supp. 1999). The trial court further determined that U-Haul was acting
as an unlicensed local recording agent for Republic Western in violation of article 21.14 of the
Insurance Code. Id. art. 21.14. Pursuant to authority granted by article 1.14-1, (6) the court issued
an order enjoining U-Haul and UHI from, inter alia, advertising or selling Safemove, Safetow,
Safestor or any other insurance products. This Court subsequently granted appellants' Emergency
Motion to Stay Temporary Injunction. See Republic Western Ins. Co. v. State, No. 3-98-235-CV
(Tex. App.--Austin May 15, 1998) (written order not designated for publication).

 Appellants challenge the temporary injunction by raising four issues on appeal. 
First, they assert that by selling the additional-insured protection packages, U-Haul and Republic
Western are not engaged in the "unauthorized business of insurance" prohibited by article 1.14-1
of the Insurance Code. Second, they argue that U-Haul is not acting as an unlicensed local
recording agent for Republic Western under article 21.14 of the Insurance Code. Third, appellants
claim that the State is not entitled to a temporary injunction under either article 1.14-1 or article
21.14. Finally, appellants allege that the order granting the State injunctive relief is void because
it is vague, overly broad, and lacks specific findings to support it.


DISCUSSION

 Ordinarily, the "abuse of discretion" standard of review applies to a trial court's
order granting or denying a temporary injunction. See 2300, Inc. v. City of Arlington, 888
S.W.2d 123, 126 (Tex. App.--Fort Worth 1994, no writ); Valenzuela v. Aquino, 763 S.W.2d 43,
44 (Tex. App.--Corpus Christi 1988, no writ). In the instant case, however, the legislature has
specified that the trial court is required to order injunctive relief, if requested, upon determining
that a party has violated article 1.14-1. See Tex. Ins. Code Ann. art. 1.14-1, § 3(f) (West Supp.
1999) ("On application for injunctive relief and a finding that a person is violating or threatening
to violate any provision of this Article, the district court shall grant the injunctive relief and the
injunction shall be issued without bond."). Because the mandatory language of section 3(f)
appears to remove the trial court's discretion in determining whether injunctive relief is proper,
the issue is whether appellants' conduct violates article 1.14-1. We will apply a de novo standard
of review to this pure question of law. See State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735
(Tex. App.--Fort Worth 1996, writ denied).


Unauthorized Insurance Business

 The heart of the present dispute is whether U-Haul violates article 1.14-1 of the
Insurance Code by offering the "Safe Protection" packages to its rental customers. We begin by
examining the text of the statute. Section 3(b) of article 1.14-1 states: "No person or insurer shall
directly or indirectly do any of the acts of an insurance business set forth in this Article except as
provided by and in accordance with the specific authorization of statute." Tex. Ins. Code Ann.
art. 1.14-1, § 3(b) (West Supp. 1999). Section 2(a) includes the following acts within the meaning
of "doing an insurance business":

1. The making of or proposing to make, as an insurer, an insurance contract.

. . .

4. The receiving or collection of any premium . . . or other consideration for any
insurance or any part thereof.


5. The issuance or delivery of contracts of insurance to residents of this state or
to persons authorized to do business in this state.


6. Directly or indirectly acting as an agent for or otherwise representing or aiding
on behalf of another any person or insurer in the solicitation, negotiation,
procurement or effectuation of insurance or renewals thereof or in the
dissemination of information as to coverage or rates, . . . or delivery of policies
or contracts, . . . or in any other manner representing or assisting a person or
insurer in the transaction of insurance with respect to subjects of insurance
resident, located or to be performed in this state.



Id. art. 1.14-1, § 2(a).

 Appellants urge that article 1.14-1 does not apply to their conduct, arguing that the
statute was enacted solely to ensure that personal jurisdiction can be validly asserted against out-of-state insurers that defraud Texas residents through mail-order solicitations. They claim that
while U-Haul may have been acting as an "unauthorized insurance agent" as defined by article
21.02, the State is attempting to make U-Haul's activities fit under article 1.14-1 solely to take
advantage of that section's relatively severe penalty provisions, which were added by amendment
in 1985: (7) up to $10,000 for each violation and for each day of violation under article 1.14-1,
compared with a single penalty of between $500 and $1000 for violating article 21.02. Tex. Ins.
Code Ann. art. 1.14-1, § 3(d), art. 21.02-1 (West Supp. 1999). Appellants assert that the State
attempts to turn article 1.14-1 into a "nuclear weapon" by applying its threat of heavy penalties
in a way the legislature never intended. The State responds that the plain language of article 1.14-1 makes the statute applicable to appellants' conduct, and argues that its broad provisions indicate
that the legislature intended a wider interpretation than appellants acknowledge.

 The parties dispute the standard of statutory construction applicable to this case. 
Our objective when we construe a statute is to determine and give effect to the legislature's intent. 
See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998) 
(citing Tex. Gov't Code Ann. § 312.005 (West Supp. 1999), and Mitchell Energy Corp. v.
Ashworth, 943 S.W.2d 436, 438 (Tex. 1997)). We accomplish that purpose, first, by looking to
the plain and common meaning of the statute's words. See Liberty Mut., 966 S.W.2d at 484
(citing Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993)). 
Where language in a statute is unambiguous, the court must seek the intent of the legislature as
found in the plain and common meaning of the words and terms used. See Monsanto, 865 S.W.2d
at 939 (citing Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 352 (Tex. 1990)). We must also
view a statute's terms in context and give them full effect. See Liberty Mut., 966 S.W.2d at 484
(citing Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994), and
RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex. 1985)). Finally, a
statute's legislative history may also be helpful in divining the legislature's intent. See id. (citing
Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 908 S.W.2d 415, 422 (Tex. 1995)).

 The State claims that U-Haul's acts of soliciting rental customers to purchase
insurance and collecting premiums for Republic Western violate subsections 1, 4, 5, and 6. We
agree. U-Haul collects insurance premiums and issues insurance contracts to residents of the state;
it also acts as Republic Western's agent by soliciting customers to purchase the "Safe Protection"
packages and by disseminating rate and coverage information. Since appellants do not dispute the
fact that U-Haul is not statutorily authorized to engage in the insurance business, under the plain
meaning of the terms in article 1.14-1 that define "doing an insurance business," U-Haul's conduct
violates the statute.

 For the same reasons, UHI and Republic Western also violate subsection 6 when
without authority they assist U-Haul in the solicitation and effectuation of insurance, in the
dissemination of coverage and rate information, and in the delivery of insurance contracts. The
evidence in the record establishes that UHI receives the premium on the insurance packages sold
by U-Haul and then remits the funds to Republic Western, its sibling corporation. UHI also
develops and prints the materials used by U-Haul to promote and document the sale of insurance
packages. In so doing, UHI violates article 1.14-1 by assisting U-Haul in the solicitation,
procurement and effectuation of insurance; in the dissemination of information as to coverage and
rates; and in the delivery of insurance contracts. See Tex. Ins. Code Ann. art. 1.14-1, § 2(a)(6)
(West Supp. 1999).

 Republic Western violates subsection 6 by issuing master policies designed to
provide additional-insured protection to U-Haul's rental customers, for which it receives premium
payments from U-Haul through UHI. The fact that Republic Western is a licensed insurer in
Texas does not exempt it from liability for participating in unauthorized insurance activities. 
Appellants argue that the "notification of coverage and the list of exclusions on the back of the
rental contract does not constitute an insurance contract, but merely informs U-Haul's rental
customers of the terms of the contract that U-Haul has with Republic Western." In their emphasis
on the status of U-Haul's customers as additional-insureds, appellants overlook the fact that the
customers enter into a contract with U-Haul: they pay a premium to U-Haul in exchange for the
benefit of being insured under U-Haul's master policies with Republic Western. The cases upon
which appellants rely are distinguishable because they deal with agreements to obtain insurance,
which the present situation does not involve. Our holding that the solicitation and sale of the "Safe
Protection" packages to U-Haul's rental customers constitute unauthorized insurance activities
makes Republic Western subject to the remedies specified under section 3 of article 1.14-1.

 Appellants insist that the legislative history does not support this interpretation,
arguing that the legislature passed article 1.14-1 in 1967 solely to regulate unauthorized, out-of-state insurers and bring them under the jurisdiction of Texas courts. They cite to the first part of
section 1, which describes the statute's purpose:


 The purpose of this Article is to subject certain persons and insurers to the
jurisdiction of the State Board of Insurance, of proceedings before the Board, and
of the courts of this state in suits by or on behalf of the state and insureds or
beneficiaries under insurance contracts. The Legislature declares that it is a subject
of concern that many residents of this state hold policies of insurance issued by
persons and insurers neither authorized to do insurance business in this state nor
qualified as eligible surplus lines insurers as defined in Article 1.14-2, thus
presenting to such residents the often insuperable obstacle of asserting their legal
rights under such policies in forums foreign to them under laws and rules of
practice with which they are not familiar.



Tex. Ins. Code Ann. art. 1.14-1, § 1 (West Supp. 1999). However, appellants' argument ignores
the remainder of that section, which provides, in pertinent part:


 The Legislature declares that it is also concerned with the protection of residents
of this state against acts by persons and insurers not authorized to do an insurance
business in this state by the maintenance of fair and honest insurance markets, by
protecting the premium tax revenues of this state, by protecting authorized persons
and insurers, which are subject to strict regulation, from unfair competition by
unauthorized persons and insurers and by protecting against the evasion of the
insurance regulatory laws of this state. In furtherance of such state interest, the
Legislature herein provides methods for substituted service of process upon such
persons or insurers in any proceeding, suit or action in any court and substitute
service of any notice, order, pleading or process upon such persons or insurers in
any proceeding before the State Board of Insurance to enforce or effect full
compliance with the insurance and tax statutes of this state, and declares in so
doing it exercises its power to protect residents of this state and to define what
constitutes doing an insurance business in this state . . . . 



Id. (emphasis added). The legislature's stated purposes of (1) protecting Texas residents against
acts by unauthorized persons and insurers, and (2) protecting authorized insurers from unfair
competition by unauthorized persons and insurers, are consistent with the State's interpretation of
article 1.14-1.

 In addition, a comparison of the carrier-licensing statute and article 1.14-1 indicates
that the legislature did not intend the latter to be limited to insurance underwritten by unlicensed
carriers. The statute governing the licensing of insurance carriers applies only to those who
"engage in the business of insuring others." Tex. Ins. Code Ann. art. 1.14, § 1 (West 1981). As
demonstrated above, article 1.14-1 defines "doing an insurance business" in a much broader
fashion. Id. art. 1.14-1, § 2 (West Supp. 1999). If the legislature had intended article 1.14-1 to
be as narrow in scope as the carrier-licensing statute, it could have limited the definition of "doing
an insurance business" to "engaging in the business of insuring others" or similar language. We
cannot ignore the legislature's choice of words in this regard.

 Moreover, the 1985 amendments to section 3 of article 1.14-1 indicate the
legislature's intention to deter all unauthorized insurance business, not just the problem of out-of-state insurers emphasized at the time the statute was originally drafted. In addition to enacting
section 3(d)'s penalty of $10,000 per day and per violation, the legislature also added section 3(h),
which provides:


 This section shall not be construed to limit the State Board of Insurance to the
remedies specified herein. It is the sense of the Legislature that persons engaging
in the business of insurance without statutory authorization constitute an imminent
peril to the public welfare and should immediately be stopped and enjoined from
doing so, but that the State Board of Insurance and the State of Texas should be
able to choose at any time any available remedy or action to bring about such a
result without regard to prior proceedings under this section.


Id. art. 1.14-1, § 3(h) (West Supp. 1999) (emphasis added). Section 3(g) authorizes the Attorney
General to sue for injunctive relief, to recover civil penalties, or both. Id. § 3(g). Reading the
amended statute as a whole, we believe that it outlaws the conduct at issue in this cause and
authorizes the injunctive relief awarded by the trial court.

 The legislative history of the 1985 amendments also supports the argument that the
legislature intended a broader application of article 1.14-1 than the one urged by appellants. A
1985 Daily Floor Report states that the proposed bill would amend article 1.14-1 "concerning
unauthorized insurance activities" and refers to article 1.14-1 as the "unauthorized insurance
activities" law, not the "unauthorized insurance carrier" law. House Study Group, Bill Analysis,
Tex. H.B. 1811, 69th Leg., R.S. (1985) (emphasis added). The digest of the report also states: 
"Existing fine and forfeiture penalties would be repealed and replaced by a civil penalty of up to
$10,000 for violating any provision of the unauthorized-activities law." Id. Even if appellants
are correct that the statute as originally drafted was intended to address only the specific problem
of obtaining jurisdiction over out-of-state insurers, we think it is clear that at least by 1985, the
legislature was also concerned with the broader goal of deterring unauthorized insurance business
in general.

 Finally, we address U-Haul's claim that the State's construction of article 1.14-1,
due to the relatively severe penalties it authorizes, would lead to results that are not just and
reasonable. See Tex. Gov't Code Ann. §§ 311.021(3), .023(5) (West 1988). However, persons
violating article 1.14-1 are subject to a civil penalty of "not more than $10,000 for each act of
violation and for each day of violation." Tex. Ins. Code Ann. art. 1.14-1 § 2(d) (West Supp.
1999) (emphasis added). The State concedes that appellants' conduct is not the most egregious
example of unauthorized insurance activities, and therefore it does not contend that the maximum
penalty is appropriate in this case. In light of the fact that section 2(d) gives a trial court discretion
to impose a fine in any amount less than $10,000, we do not find appellants' argument persuasive.

 In issuing the temporary injunction, the trial court correctly determined that
appellants are engaged in the "unauthorized business of insurance" prohibited by article 1.14-1. 
We overrule appellants' first issue.

 In their second issue, appellants argue that the State failed to prove that U-Haul acts
as a local recording agent for Republic Western. "Local recording agent" is defined as:


 [A] person or firm engaged in soliciting and writing insurance, being authorized
by an insurance company or insurance carrier, including fidelity and surety
companies, to solicit business and to write, sign, execute, and deliver policies of
insurance, and to bind companies on insurance risks, and who maintain an office
and a record of such business and the transactions which are involved, who collect
premiums on such business and otherwise perform the customary duties of a local
recording agent representing an insurance carrier in its relation with the public

 . . . .



Id. art. 21.14, § 2(a)(1) (West Supp. 1999). The evidence established at the temporary injunction
hearing demonstrates that U-Haul is engaged in soliciting and writing insurance. It solicits each
of its customers to purchase an insurance package and collects a premium from every customer
who purchases insurance. The purchase of the insurance is reflected on the contract between
U-Haul and its customers, which describes the policy's coverage limits and exclusions, and
explains how the customer is to report claims.

 The evidence also shows that U-Haul is authorized by Republic Western to engage
in the sale of insurance policies on its behalf. Republic Western issues master policies in which
it agrees to insure any U-Haul customer who purchases an insurance package. When a U-Haul
customer purchases an insurance package at a U-Haul rental counter, Republic Western is
obligated at that point to provide the customer with the coverage provided by the contract. 
Contrary to appellants' assertion, it is evident under the terms of the master insurance policies that
Republic Western authorizes U-Haul to solicit insurance on its behalf; to write, sign, execute, and
deliver policies of insurance to U-Haul customers; and to bind Republic Western on the customers'
insurance risks as additional insureds. Although U-Haul may not have general authority to bind
Republic Western, it is authorized to bind Republic Western at least to the extent of adding its 
customers as additional insureds under Republic Western's master policies with U-Haul.

 Appellants also argue that "[a]ny office and records maintained by U-Haul would
necessarily pertain to U-Haul's equipment rental business, not to any business of binding Republic
Western on insurance risks." Testimony from the hearing on the temporary injunction shows that
U-Haul dealers remit rental proceeds to UHI, which in turn sends to Republic Western the portion
derived from the sale of "Safe Protection" packages. While binding Republic Western to
insurance risks on its rental customers may not be U-Haul's primary business, the statute does not
require any specific proportion of insurance activity. Furthermore, it is U-Haul that maintains
records of transactions involving the purchase of "Safe Protection" packages, as evidenced by
testimony in the record that when Republic Western receives a claim arising under one of the
packages, it contacts U-Haul to verify that the claimant is actually insured under a policy.

 Finally, we are not persuaded by appellants' argument that the trial court's
injunction is unauthorized because U-Haul is ineligible for a local recording agent's license. We
believe that the State sufficiently established that U-Haul acts as a local recording agent for
Republic Western for the limited purpose of selling "Safe Protection" packages to U-Haul's
customers. Appellants' second issue is overruled.


Validity of the Temporary Injunction

 In their third issue, appellants argue that the temporary injunction issued by the trial court
is void on its face because it is too broad and vague. In their fourth issue, they complain that the
order lacks certain required findings. We will address these issues together.

 The injunction orders U-Haul and UHI to desist and refrain from engaging in any of the
following acts in the state of Texas:

1. advertising, soliciting, offering to sell, or selling products known as Safemove,
Safetow and Safestor, or any other products consisting in whole or in part of
insurance (hereinafter collectively referred to as "insurance products");
however, the term "insurance products" does not include collision damage
waivers that are sold alone and are not packaged or bundled with insurance
components;


2. disseminating information as to coverage or rates of any insurance products;


3. issuing or delivering contracts of insurance to residents of this state or to
persons authorized to do business in this state;


4. receiving or collecting any premium, commission, membership fees, dues or
other consideration for any insurance products or any part thereof;


5. directly or indirectly acting as an agent for or otherwise representing or aiding
Republic Western Insurance Company or any other person or insurer in the
solicitation, negotiation, procurement or effectuation of insurance or renewals
thereof or in the dissemination of information as to coverage or rates, or
forwarding of applications, or delivery of policies or contracts, or inspection
of risks, a fixing of rates or investigation or adjustment of claims or losses or
in the transaction of matters subsequent to effectuation of the contract and
arising out of it, or in any other manner representing or assisting a person or
insurer in the transaction of insurance with respect to subjects of insurance
resident, located or to be performed in this state;


6. the doing of any kind of insurance business specifically recognized as
constituting the doing of an insurance business within the meaning of the
statutes relating to insurance; and


7. the doing or proposing to do any insurance business in substance equivalent to
any of the foregoing in a manner designed to evade the provisions of the
statutes relating to insurance.



The injunction also orders U-Haul to refrain from acting as a local recording agent for Republic
Western, and prohibits Republic Western from directly or indirectly aiding U-Haul or UHI:


 in the solicitation, negotiation, procurement or effectuation of insurance or
renewals thereof or in the dissemination of information as to coverage or rates, or
forwarding of applications, or delivery of policies or contracts, or inspection of
risks, a fixing of rates or investigation or adjustment of claims or losses or in the
transaction of matters subsequent to effectuation of the contract and arising out of
it, or in any other manner representing or assisting a person or insurer in the
transaction of insurance with respect to subjects of insurance resident, located or
to be performed in this state.



However, the injunction expressly does not prohibit Republic Western from processing or paying
claims arising from insurance products purchased by U-Haul customers. It also allows U-Haul,
with respect to customers who purchased insurance products at U-Haul dealers outside Texas, to
inquire whether the customers had purchased a "Safe Protection" package and to disseminate
information necessary to aid or respond to that customer.

 Texas Rule of Civil Procedure 683 specifies: "Every order granting an injunction
. . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in
reasonable detail and not by reference to the complaint or other document, the act or acts sought
to be restrained; . . ." Tex. R. Civ. P. 683. The requirements of Rule 683 are mandatory and
must be strictly followed. See InterFirst Bank San Felipe, N.A. v. Paz Constr. Co., 715 S.W.2d
640, 641 (Tex. 1986). The Texas Supreme Court has stated:


 [A]n injunction decree must be as definite, clear and precise as possible and when
practicable it should inform the defendant of the acts he is restrained from doing,
without calling on him for inferences or conclusions about which persons might
well differ and without leaving anything for further hearing. But obviously the
injunction must be in broad enough terms to prevent repetition of the evil sought
to be stopped, whether the repetition be in form identical to that employed prior to
the injunction or (what is far more likely) in somewhat different form calculated to
circumvent the injunction as written.



San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 291 S.W.2d 697, 702 (Tex. 1956)
(citation omitted).

 We disagree with appellants' claim that the injunction is overly broad. While it
specifically prohibits U-Haul and UHI from soliciting or selling any of the "Safe Protection"
packages, it also prevents these appellants from circumventing the injunction simply by developing
a newly titled insurance product or brochure. By tracking the prohibitions outlined in section 2
of article 1.14-1, the injunction prevents U-Haul from engaging in any "unauthorized insurance"
conduct that would be illegal under that article. Appellate courts have upheld similar challenges
to injunctions as being overly broad or vague. See Schleuter v. City of Fort Worth, 947 S.W.2d
920, 933 (Tex. App.--Fort Worth 1997, pet. denied) (order enjoining appellants from operating
sexually oriented business without receiving Specialized Certificate of Occupancy, when order
provided specific definitions of "sexually oriented entertainment," "entertainment personnel,"
"nudity or state of nudity," and "simulated nudity," was as "definite, clear and precise as
possible" because it informed appellants of the specific acts they were restrained from doing
without calling on them to make inferences or conclusions about conduct upon which people might
differ); Thompson v. Thompson Air Conditioning & Heating, Inc., 884 S.W.2d 555, 559 (Tex.
App.--Texarkana 1994, no writ) (order prohibiting appellant from using his surname "directly or
indirectly in connection with the sales and servicing of heating and air conditioning units and
equipment or related products" was not impermissibly vague); Liberty Mut. Ins. Co. v. Mustang
Tractor & Equip. Co., 812 S.W.2d 663, 667-68 (Tex. App.--Houston [14th Dist.] 1991, no writ)
(rejecting claim that order enjoining insurance company from "withdrawing its defense" of its
insured pending resolution of dispute was vague and ambiguous); Breithaupt v. Navarro County,
675 S.W.2d 335, 339-40 (Tex. App.--Waco 1984, writ ref'd n.r.e.) (upholding injunction
commanding appellants to stop "directly or indirectly interfering with the use of [a public] road");
cf. Ex parte Brown, 543 S.W.2d 82, 86 (Tex. 1976) (order enjoining appellant from "taking any
steps whatsoever" to consolidate the cause with another pending cause held not unconstitutionally
vague or uncertain).

 We also conclude that the injunctive order does not lack "necessary findings." 
Appellants argue: "Absent findings that identify specific statutory violations, U-Haul and
Republic Western cannot know what they supposedly did wrong or what they are enjoined from
doing." This argument fails because the injunction both tracks specific portions of article 1.14-1
and identifies the particular conduct--the selling of the "Safe Protection" packages--that violates
the statute. Moreover, the trial court specifically found (1) that appellants "are each engaged in
unauthorized insurance activities in violation of Tex. Ins. Code art. 1.14-1," and (2) that U-Haul
"is acting as an unlicenced local recording agent for Republic Western Insurance Company in
violation of Tex. Ins. Code art. 21.14." Having received a great quantity and quality of briefing 
from appellants arguing that their conduct does not violate these Insurance Code provisions, we
are not convinced by the argument that appellants "cannot know what they supposedly did
wrong."

 Appellants further claim that the order does not include findings that the State has
satisfied two of the common-law requirements for temporary injunctive relief: irreparable harm
and no adequate remedy at law. See Fasken v. Darby, 901 S.W.2d 591, 592 (Tex. App.--El Paso
1995, no writ). However, article 1.14-1 has eliminated the need to establish the common-law
factors of harm and equity by specifying that an injunction shall issue if the court determines that
a violation of that article has occurred. See Tex. Ins. Code Ann. art. 1.14-1, § 3(f) (West Supp.
1999). We overrule appellants' third and fourth issues.


CONCLUSION

 The trial court properly determined that selling "Safe Protection" insurance
packages to U-Haul's rental customers violates article 1.14-1 of the Texas Insurance Code. The
trial court also correctly ruled that U-Haul acts as an unlicensed local recording agent for Republic
Western in violation of article 21.14 of the Insurance Code. We conclude that the trial court did
not err in issuing a temporary injunction against appellants in this regard, and that the injunction
is not void for vagueness or for any lack of required findings as alleged. We therefore affirm the
trial court's order issuing a temporary injunction and order that the stay issued by this Court on
May 15 be lifted.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: March 4, 1999

Publish


1. Purchasing the damage waiver relieves the customer from having to reimburse U-Haul for
damage to U-Haul's equipment during the rental period. The trial court ruled that the CDW is
not insurance and is not governed by the Texas Insurance Code; that ruling is not at issue in this
appeal.
2. The cargo insurance provides $25,000 of coverage for one-way trips and $15,000 for in-town hauling. Among the exclusions is "loss or damage resulting from water, improper packing,
leakage, breakage, shifting of cargo, marring, scratching, temperature or atmospheric changes,
death of animals, mechanical breakdown except as the result of collision, fire, lightning,
windstorm, hail, explosion, riot or civil commotion, flood, vandalism, or malicious mischief."
3. Under Safemove, the renter and passenger are each insured for $1,000 in medical expenses
resulting from an accident. In the event of accidental death, Safemove provides $25,000 in life
insurance for the renter and $15,000 for the passenger. Safetow provides $500 of coverage for
medical expenses in the event of an accident; accidental death benefits are limited to $10,000 for
the renter and $5,000 for the passenger.
4. Among the coverage exclusions under Safestor are losses resulting from theft, mysterious
disappearance, or intentional or criminal acts; losses resulting from flood, tidal waters, ground
waters, subsurface waters, including sewers and drains; vermin, insect infestation, wear and tear,
or atmospheric changes. Losses resulting from burglary are covered for only 50% of the
property's value, and only if the burglary is evidenced by visible signs of forced entry.
5. Amerco, Inc. is the parent corporation of both Republic Western and UHI.
6. See Tex. Ins. Code Ann. art. 1.14-1, § 3(f) (West Supp. 1999).
7. See art. 1.14-1, § 3, amended by Act of June 15, 1985, 69th Leg., R.S., ch. 918, § 2, 1985
Tex. Gen. Laws 3089, 3090.


e trial court specifically found (1) that appellants "are each engaged in
unauthorized insurance activities in violation of Tex. Ins. Code art. 1.14-1," and (2) that U-Haul
"is acting as an unlicenced local recording agent for Republic Western Insurance Company in
violation of Tex. Ins. Code art. 21.14." Having received a great quantity and quality of briefing 
from appellants arguing that their conduct does not violate these Insurance Code provisions, we
are not convinced by the argument that appellants "cannot know what they supposedly did
wrong."

 Appellants further claim that the order does not include findings that the State has
satisfied two of the common-law requirements for temporary injunctive relief: irreparable harm
and no adequate remedy at law. See Fasken v. Darby, 901 S.W.2d 591, 592 (Tex. App.--El Paso
1995, no writ). However, article 1.14-1 has eliminated the need to establish the common-law
factors of harm and equity by specifying that an injunction shall issue if the court determines that
a violation of that article has occurred. See Tex. Ins. Code Ann. art. 1.14-1, § 3(f) (West Supp.
1999). We overrule appell