TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00406-CV







Texas Workers' Compensation Commission, Appellant



v.



City of Eagle Pass/Texas Municipal League Workers' Compensation Joint Insurance


Fund; and Capital Metro Transportation Authority/Texas Municipal League


Workers' Compensation Joint Insurance Fund, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-08549, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 Appellant, the Texas Workers' Compensation Commission ("the Commission"),
appeals from a district court judgment reversing a Commission order assessing penalties. The
judgment declared that appellees, (1) as political subdivisions of the State, possess immunity from
administrative penalties and that their immunity had not been waived. We will reverse the
decision of the trial court and render judgment in accordance with the Commission's order.


BACKGROUND

 The Commission is authorized to review and to audit the records of insurance
carriers to determine if they are in compliance with the Workers' Compensation Act ("the Act"). 
See Tex. Lab. Code Ann. §§ 414.001-.007 (West 1996); 28 Tex. Admin. Code §§ 180.1-.8
(1999). The definition of insurance carrier includes political subdivisions that self-insure. See
Tex. Lab. Code Ann. § 401.011(27)(C) (West Supp. 2000). Appellees are unquestionably
political subdivisions of the State of Texas. In reviewing the records of the City of Eagle Pass
("Eagle Pass") and the Capital Metro Transportation Authority ("Capital Metro"), the
Commission found that each appellee had twice violated section 409.023 of the Labor Code by
making late payments of benefits. See id. § 409.023 (West 1996). Eagle Pass paid benefits four
days late in March 1994 and one day late in November 1994. Capital Metro paid benefits
eighteen days late in March 1995 and thirteen days late in April 1995. The Commission assessed
administrative penalties against Eagle Pass in the amount of $1,875 and against Capital Metro in
the amount of $7,275.

 At an administrative hearing, appellees stipulated to the violations of section
409.023 and to the amount of the penalties imposed. Appellees' sole contention was that as
political subdivisions, they were immune from the imposition of administrative penalties under
the doctrine of sovereign immunity. The Administrative Law Judge ("ALJ") rejected appellees'
argument and upheld the Commission's order assessing penalties. Appellees subsequently filed
suit in district court in Travis County for judicial review of the ALJ's decision. In the suit,
appellees again urged that the Commission could not assess administrative penalties against
political subdivisions because the Legislature had not expressly waived the subdivisions' sovereign
immunity from such penalties. In reversing the ALJ's decision, the district court concluded that
sovereign immunity prevented the State's imposition of penalties absent the Legislature's express
waiver of the subdivision's immunity. The Commission then appealed to this Court.


DISCUSSION


Sovereign Immunity

 In its sole issue, the Commission contends that sovereign immunity does not apply
to the present situation. As this issue is a pure question of law, we review the trial court's ruling
de novo. See Republic W. Ins. Co. v. State, 985 S.W.2d 698, 701 (Tex. App.--Austin 1999, pet.
dism'd w.o.j.).

 The Commission argues that because municipalities and other political subdivisions
of the State exist under the authority of the State and are subject to the State's regulatory
authority, such entities do not enjoy sovereign immunity from state regulatory authority. We
agree.

 Appellees offer no authority for the proposition that political subdivisions such as
municipalities are sovereign entities. To the contrary, municipalities are created as political
subdivisions of the State and "represent no sovereignty distinct from the state and possess only
such powers and privileges as have been expressly or impliedly conferred upon them." Payne v.
Massey, 196 S.W.2d 493, 495 (Tex. 1946). A municipality's sovereignty is dependent upon that
of the State. See City of Irving v. Dallas/Fort Worth Int'l Airport Bd., 894 S.W.2d 456, 465
(Tex. App.--Fort Worth 1995, writ denied). While it is well established that sovereign immunity
protects the federal government from state suits and vice versa, this immunity stems from the
basic precept of federalism that the federal and several state governments each possess
independent sovereignty. Because political subdivisions of the State do not possess such
independent sovereignty, they have no immunity as against the State.

 Under the common law doctrine of immunity, municipalities and other political
subdivisions of the State possess limited immunity from actions brought by private third parties. 
This immunity results from agency principles and the fact that municipalities and political
subdivisions are agents of the State. See Lawrence v. City of Wichita Falls, 906 S.W.2d 113, 115
(Tex. App.--Fort Worth 1995, writ denied). A political subdivision's immunity is a privilege
afforded it based on its existence as a subdivision of the State, and "[a] municipality, as a political
subdivision of the state, is not liable for the acts or conduct of its officers or employees . . . ." 
City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994) (emphasis added). Thus, a
political subdivision's derivative immunity acts as a shield against actions brought by private
parties but not as a shield against the State, from which the subdivision derives its immunity.

 The cases appellees cite do not persuade us that political subdivisions possess
immunity against the State. In their argument, appellees rely heavily on cases that involve
conflicts between state and federal governments. Appellees rely upon cases that stand for the
proposition that state and federal sovereigns lack power to regulate or sue one another absent
consent. See, e.g., United States Dep't of Energy v. Ohio, 503 U.S. 607 (1992). In Ohio, the
Supreme Court held that the State of Ohio could not collect administrative penalties against an
agency of the federal government because Congress has not waived the federal government's
sovereign immunity from liability for civil fines imposed by a state for violations of certain federal
statutes. See id. at 611. Having determined that political subdivisions in Texas are not
independently sovereign, we find that cases like Ohio, which involve conflicts between two
independent sovereigns, offer no guidance in determining the present issue.

 Appellees offer a single New Jersey opinion containing language that questions
whether political subdivisions enjoy immunity against state regulation. See New Jersey Dep't of
Envtl. Protection v. Middlesex County Bd. of Chosen Freeholders, 502 A.2d 1188 (N.J. Super.
Ct. Ch. Div. 1985), aff'd, 506 A.2d 13 (N.J. Super. App. Div. 1986). However, that case was
not decided on the basis of immunity. In Middlesex, the court held that a state regulatory agency
charged with the administration of waste-management plans could not sue counties for alleged
failure to adopt plans because "the exclusive remedy when a county fails to discharge its planning
responsibilities under the [New Jersey Solid Waste Management Act] is for the [New Jersey
Department of Environmental Protection] to exercise its own planning powers . . . ." Id. at 1196. 
Thus, Middlesex was decided on the basis of the agency's enabling statute. Because the holding
in Middlesex did not turn on sovereign immunity, that case does not persuade us that political
subdivisions of the State of Texas have independent sovereignty or sovereign immunity vis-à-vis
the State. We sustain the Commission's contention that sovereign immunity is inapplicable in the
present situation.


Application of Labor Code Provisions Against Subdivisions

 Appellees respond by arguing that even if sovereign immunity does not protect
them from state regulation, section 415.021 of the Labor Code, which authorizes the Commission
to assess administrative penalties, does not empower the Commission to assess penalties against
political subdivisions. Section 415.021 specifically authorizes the Commission to assess
administrative penalties "against a person who commits an administrative violation." Tex. Lab.
Code Ann. § 415.021(a) (West 1996) (emphasis added). Before 1993, the Act defined "person"
as an "individual, corporation, organization, business trust, estate, trust, partnership, association,
or other legal entity." (2) The definition did not expressly include a governmental subdivision.

 Appellees refer us to cases in which courts have found that the term "other legal
entity" does not include a political subdivision. In Bridges v. Texas A&M University System, 790
S.W.2d 831, 834-35 (Tex. App.--Houston [14th Dist.] 1990, no writ), the court construed a
definition of "person" under the Texas Insurance Code that was substantially similar to the pre-codified definition here and held that because the definition made no reference to the State or state
agencies, the Legislature did not waive governmental immunity. See id. Because we have
determined that sovereign immunity is not applicable in the present case, the reasoning in Bridges
offers no guidance here. The only non-immunity case appellees cite involved a substantially
different definition. In Lake LBJ Municipal Utility District v. Coulson & C.A.E., Inc., 839
S.W.2d 880, 890-91 (Tex. App.--Austin 1992, no writ), this Court held that article 2226, (3) which
subjected a "person" to liability for attorneys' fees, did not encompass a "governmental unit." 
However, article 2226 enumerated "person" and "other legal entity" as separate and distinct
categories, whereas even the pre-codified workers' compensation statute defined "person" to
include "other legal entities." Because the cases appellees cite do not involve comparable
situations, they are not instructive.

 The Legislature codified the Labor Code as part of the State's continuing statutory
revision program to reorganize the law without substantive change. See Tex. Lab. Code Ann.
§ 1.001(a) (West 1996). When the Workers' Compensation Act was codified in 1993, the Act's
definition of "person" was omitted with a note explaining that the omitted definition was
"substantively identical" to the definition of "person" found in the Code Construction Act. See
id. § 401.011, Revisor's Note 8 (West 1996). The Code Construction Act expressly includes a
governmental subdivision within its definition of "person." (4) Thus, appellees are indisputably
"persons" against which the Commission may assess an administrative penalty under the Code
Construction Act. Appellees argue that the Revisor's Note is incorrect because the two definitions
are not substantively identical, that adopting the Code Construction Act's definition would be a
substantive change, and, because no substantive change was intended or allowed, that the pre-1993
definition of "person" should be given effect despite its repeal.

 Appellees rely on Johnson v. City of Fort Worth, 774 S.W.2d 653 (Tex. 1989), to
argue that if the codified version of the law is substantively different from the pre-codified statute,
the earlier statute must control. This reliance is misplaced. The Texas Supreme Court recently
noted that Johnson did not involve a substantive change between the former law and the codified
statute, and that the court was thus not called upon in that case to decide whether the old law
controlled over the new. See Fleming Foods of Texas, Inc. v. Rylander, 6 S.W.3d 278, 286 (Tex.
1999). Faced squarely with that issue in Fleming Foods, the court held that when the later law
is direct and unambiguous, it must be given effect. See id. Without deciding the construction of
the repealed definition, the current definition clearly allows for the assessment of administrative
penalties against a political subdivision in appellees' position. Even assuming, as appellees
contend, the codification caused a substantive change, the current definition must be given effect. 
"The codifications enacted by the Legislature are the law of this State, not the prior, repealed
law." Id. Section 415.021 authorizes penalties against appellees.

 "We must be able to accept and to rely upon the words written by the Legislature
if they are clear and unambiguous, their meaning is plain when the code in which they appear is
read in its entirety, and they do not lead to absurd results." Id. at 285. The Workers'
Compensation Act specifically requires political subdivisions to provide workers' compensation
benefits to their employees. See Tex. Lab. Code Ann. § 504.011 (West 1996). If a subdivision
chooses to provide such benefits through self-insurance, then the subdivision falls under the Act's
definition of "insurance carrier," which expressly includes "a governmental entity that self-insures, either individually or collectively." Id. § 401.011(27)(C). Section 409.023 of the Act
defines when an insurance carrier commits an administrative violation and specifies the class of
administrative violation that non-compliance creates. See id. § 409.023. Section 415.022 of the
Act specifies the amount of administrative penalties that can be assessed for each class of an
administrative violation. See id. § 415.022 (West 1996). Read in its entirety, the Act clearly
subjects political subdivisions to administrative penalties.

 The plain meaning of the statutory text and the structure of the Act as a whole
support the conclusion that political subdivisions and municipalities are subject to administrative
penalties under the Workers' Compensation Act. We therefore reject appellees' argument that
the Commission lacks the statutory authority to impose penalties against them, and we resolve any
conflict in favor of the Commission. See City of Dallas v. Southwest Airlines, 371 F. Supp. 1015,
1034 (N.D. Tex. 1973) (stating that when conflict exists between municipality and state regulatory
agency, preference will be given to regulatory agency), aff'd, 494 F.2d 773 (5th Cir. Tex. 1974). 
For the reasons stated above, we sustain the Commission's sole issue.


CONCLUSION

 We determine that political subdivisions have no sovereign immunity against the
State and that section 415.021 of the Texas Labor Code subjects political subdivisions to
administrative penalties. We therefore reverse the trial court's judgment and render judgment in
accordance with the Commission's order assessing penalties against Eagle Pass in the amount of
$1,875 and against Capital Metro in the amount of $7,275. See Tex. R. App. P. 43.2(c).



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Rendered

Filed: March 9, 2000

Publish
1. The Commission assessed administrative penalties against appellees, the City of Eagle Pass
and Capital Metro. Both entities belong to the Texas Municipal League Workers' Compensation
Joint Insurance Fund, a self-insurance pool. For convenience, we will refer to these parties
collectively as appellees.
2. Act of December 1, 1989, 71st leg., 2nd C.S., ch. 1, § 1.03(38), 1989 Tex. Gen. Laws 1,
5 (Tex. Rev. Civ. Stat. Ann. art. 8308-1.03(38), since repealed). 
3. Tex. Rev. Civ. Stat. Ann. art 2226, since repealed and codified as amended at Tex. Civ.
Prac. & Rem. Code Ann. § 38.001 (West 1986).
4. Section 311.005(2) of the 1985 Code Construction Act defines a "person" to include a
"corporation, organization, government or governmental subdivision or agency, business trust
estate, trust, partnership, association, and any other legal entity." Tex. Gov't Code Ann.
§ 311.005(2) (West 1998) (emphasis added).



 substantive change, the current definition must be given effect. 
"The codifications enacted by the Legislature are the law of this State, not the prior, repealed
law." Id. Section 415.021 authorizes penalties against appellees.

 "We must be able to accept and to rely upon the words written by the Legislature
if they are clear and unambiguous, their meaning is plain when the code in which they appear is
read in its entirety, and they do not lead to absurd results." Id. at 285. The Workers'
Compensation Act specifically requires political subdivisions to provide workers' compensation
benefits to their employees. See Tex. Lab. Code Ann. § 504.011 (West 1996). If a subdivision
chooses to provide such benefits through self-insurance, then the subdivision falls under the Act's
definition of "insurance carrier," which expressly includes "a governmental entity that self-insures, either individually or collectively." Id. § 401.011(27)(C). Section 409.023 of the Act
defines when an insurance carrier commits an administrative violation and specifies the class of
administrative violation that non-compliance creates. See id. § 409.023. Section 415.022 of the
Act specifies the amount of administrative penalties that can be assessed for each class of an
administrative violation. See id. § 415.022 (West 1996). Read in its entirety, the Act clearly
subjects political subdivisions to administrative penalties.

 The plain meaning of the statutory text and the structure of the Act as a whole
support the conclusion that political subdivisions and municipalities are subject to administrative
penalties under the Workers' Compensation Act. We therefore reject appellees' argument that
the Commission lacks the statutory authority to impose penalties against them, and we resolve any
conflict in favor of the Commission. See City of Dallas v. Southwest Airlines, 371 F. Supp. 1015,
1034 (N.D. Tex. 1973) (stating that when conflict exists between municipality and state regulatory
agency, preference will be given to regulatory agency), aff'd, 494 F.2d 773 (5th Cir. Tex. 1974). 
For the reasons stated above, we sustain the Commission's sole issue.


CONCLUSION

 We determine that political subdivisions have no sovereign immunity against the
State and that section 415.021 of the Texas Labor Code subjects political subdivisions to
administrative penalties. We therefore reverse the trial court's judgment and render judgment in
accordance with the Commission's order assessing penalties against Eagle Pass in the amount of
$1,875 and against Capital Metro in the amount of $7,275. See Tex. R. App. P. 43.2(c).



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Rendered

Filed: March 9, 2000

Publish
1. The Commission assessed administrative penalties against appellees, the City of Eagle Pass
and Capital Metro. Both entities belong to the Texas Municipal League Workers' Compensation
Joint Insurance Fund, a self-insurance pool. For convenience, we will refer to these parties
collectively as appellees.
2.