TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00502-CV






Clayton Miller, doing business as Trucks, Etc., Appellant



v.



Bell County, Texas, and Dan Smith, Sheriff of Bell County, Texas, Appellees






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT


NO. 170,239-C, HONORABLE WILLIAM C. BLACK, JUDGE PRESIDING 






 Appellant Clayton Miller, doing business as Trucks, Etc. sued appellees (1) for
damages, claiming that agents of the Bell County Sheriff's Department negligently released a 1994
Ford pick-up truck to which Miller held title and that the release was in violation of article 47.01
of the Texas Code of Criminal Procedure (West Supp. 2000). The district court rendered
judgment granting appellees' motion for summary judgment on the bases of sovereign immunity
and official immunity. We will affirm the district court's judgment.


BACKGROUND


 In November 1996, Miller, who is in the business of buying and selling used
vehicles, purchased the subject truck on account from Holley Chevrolet. It was the usual practice
between these parties for Miller to reserve payment until Holley was prepared to transfer title. 
A few days after purchasing the truck, Miller sold it on credit to Richard Farmer d/b/a F&F Lease
Sales. It appears from the record that thereafter Farmer forged a certified copy of title to the
vehicle and sold the truck to Kay Grainger d/b/a Grainger Automotive. Grainger Automotive is
located in Horry County, South Carolina. The record indicates that Grainger was unaware of the
forgery and used the forged Texas title to obtain a South Carolina title to the vehicle. Although
issued on the basis of a forged document, no defect is alleged in the South Carolina title, which
is dated February 12, 1997.

 Around May 9, 1997, Holley Chevrolet contacted Miller regarding payment for
the truck. Holley's call reminded Miller that Farmer had not paid him for the vehicle. Miller
contacted Farmer, who informed him that the vehicle had been taken to South Carolina. After
Farmer refused to pay Miller, Miller obtained a duplicate copy of the truck's key and went to
South Carolina. Miller did not contact South Carolina police or Grainger but instead went to
Grainger Automotive under cover of darkness and took the vehicle, leaving no note or other
indication who had taken the truck or why. On May 15, Grainger informed authorities in Horry
County, South Carolina, that the truck had been stolen.

 Miller brought the truck back to his Trucks, Etc. car lot in Brownwood, Texas,
where the truck remained from May 17 through June 24. The record indicates that Miller
received title to the truck after he brought it back to Texas, when he gave Holley an undated check
for the purchase price. The record is unclear on the date Miller gave Holley the check, but it does
indicate that Holley accepted the draft and filled in May 23, 1997 as the date. Using the original
title, Miller applied for and received title in his own name on May 19, 1997.

 On June 23, Horry County police detective Mitchell Floyd contacted Texas
Department of Public Safety Motor Vehicle Theft Services seeking assistance in locating the
allegedly stolen truck. At Floyd's request, DPS Sergeant Roy Parrack went to the lot of Trucks,
Etc. to look for the vehicle. Parrack saw the truck, but the car lot was closed for the evening. 
The next day Miller sent the truck to a paint and body shop in Belton, Texas, for repairs and a
paint job. When Parrack arrived later that day looking for the vehicle, it was gone. Parrack
inspected Trucks, Etc.'s premises and business records and found no indication the truck had been
sold.

 While Parrack was reviewing the records, Miller mentioned that he had considered
contacting Parrack regarding a vehicle "that he recently had to repossess." Miller went on to tell
Parrack about the transaction with Farmer and how he and his business partner "stole the pickup
back." Miller also mentioned that the truck was at a body shop in Belton. Parrack did not inform
Miller that the vehicle had been reported stolen. For a period thereafter, Parrack maintained
random surveillance of the Trucks, Etc. lot in hopes of recovering the truck when it was returned.

 On July 22, Parrack contacted Waco DPS Sergeant Jody Fore for assistance, giving
Fore information about the truck and requesting that he attempt to locate the body shop and
vehicle. Fore found the truck on July 24 and, with the assistance of the Bell County Sheriff's
Department, seized the vehicle. First Call Wrecking Service towed the truck to its impound lot
and "a hold was placed on the vehicle until the matter was investigated."

 Bell County Sheriff's Department investigator Tim Steglich handled Bell County's
investigation. Steglich contacted Miller because he was the person who had left the truck at the
body shop. Miller referred Steglich to Sergeant Parrack but did not tell Steglich that he had a
Texas title to the truck. Parrack told Steglich that the Horry County South Carolina Police
Department was the "originating agency" on the theft report and that Detective Floyd was
investigating the theft and had the South Carolina title in his file. Parrack informed Steglich that
he was investigating the "obvious forgeries and odometer alterations and any other violations . . .
that will be under Texas jurisdiction." In their affidavits, both Sheriff Smith and Sergeant
Steglich stated that it is a common practice in law enforcement to refer the full investigation and
disposition of stolen property to the originating agency.

 Within five days, First Call contacted Steglich and told him that someone from
South Carolina wanted to retrieve the vehicle. Steglich called Floyd, who authorized releasing
the vehicle to Grainger's representative, "again stating that [Grainger] held a South Carolina
issued title." Steglich released the hold on the truck, "and an individual authorized by Mitchell
Floyd of Horry County picked up the vehicle." In his affidavit, Steglich stated that the vehicle
was released within fourteen days of its being recovered by the Bell County Sheriff's Department. 
Steglich did not learn of Miller's claim to the vehicle until January 9, 1998.

 On July 28, 1997, Parrack interviewed Miller. Miller reiterated the story involving
Farmer, admitted not having title to the truck when he "repossessed" it, and stated that he checked
with the tax assessor collector to make sure the truck had not been reported stolen before
transferring title into his name. Miller was not notified when the vehicle was released and
"continued cooperating with Sergeant Parrack concerning the investigation of the Horry County
theft report, anticipating that as soon as the investigation was completed, [his] truck would be
returned [to him]." On August 22, having been unable to obtain information regarding the truck
or the investigation, Miller filed a petition for restoration of allegedly stolen property. See Tex.
Code Crim. Proc. Ann. art. 47.01a (West Supp. 2000). After the petition was served, Miller
learned that the truck had been released.

 Miller then filed the instant action against Bell County and the Sheriff in his official
capacity. In his petition, Miller alleged that the Sheriff's Department released the truck "without
Plaintiff's knowledge or consent, and in violation of Article 47.01." Miller claimed that
"[r]epresentatives of the Sheriff's Department of Bell County, Texas, in releasing the automobile
in violation of State Law were acting in the due course and scope of their employment as
representatives of the Sheriff's Department . . . and . . . of Bell County, Texas, and on behalf of
the Sheriff . . . and on behalf of Bell County." Miller further contended that "[t]he actions of the
Bell County Sheriff's Department in releasing the automobile, with notice of the claim of Plaintiff,
constitute[d] negligence on the part of the Sheriff's Department, and thus on Bell County, Texas,
which proximately caused damage to Plaintiff." In the petition, Miller sought "[j]udgment against
BELL COUNTY, TEXAS, and DAN SMITH, Sheriff of Bell County, Texas, jointly and
severally, in the amount of $9,150.00." Miller also requested that he be awarded court costs and
"other and further relief to which Plaintiff may be justly entitled." Miller did not request
injunctive or declaratory relief, did not secure legislative consent to sue appellees, and did not
allege that his suit arose under the Tort Claims Act. (2)

 Appellees answered by general denial and pleaded as affirmative defenses sovereign
immunity and official immunity and good faith. They also filed a motion for summary judgment,
asserting that, absent consent, sovereign immunity shielded the County and the Sheriff from suit
and that official immunity protected Department employees and deputies from liability, which in
turn meant that appellees were immune from liability for the vicarious liability claims. Miller
responded by arguing that because the release of the truck violated article 47.01 of the Code of
Criminal Procedure, actions taken in violation of stated policy are not protected by immunity and
he was therefore entitled to sue for negligence and damages. On July 9, 1999, the district court
rendered a take-nothing judgment, stating that appellees were "entitled to summary judgment in
all respects."


DISCUSSION


 Miller raises a single point of error, alleging that the district court erred in granting
summary judgment because appellees' actions violated article 47.01 and therefore he could sue
them for negligence and damages.

 The standards for reviewing a motion for summary judgment are well established:
(1) the movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the
non-movant and any doubts resolved in its favor. See Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548-49 (Tex. 1985).

 When a trial court's order does not specify the basis for the summary judgment,
appellate courts will uphold the court's decision if it is correct under any theory advanced in the
motion for summary judgment. See Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex.
1989); Turner v. Texas Dep't of Mental Health & Mental Retardation, 920 S.W.2d 415, 417 (Tex.
App.--Austin 1996, writ denied). We will first address whether the trial court was correct in
finding that appellees were entitled to claim sovereign immunity. Because this issue is solely a
question of law, we review it de novo. See Republic W. Ins. Co. v. State, 985 S.W.2d 698, 701
(Tex. App.--Austin 1999, pet. dism'd w.o.j.).

 Sovereign immunity, unless expressly waived, protects the State of Texas, its
agencies, and its officials from lawsuits for damages absent legislative consent to sue. See Federal
Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Texas Natural Resource Conservation
Comm'n v. IT-Davy, 998 S.W.2d 898, 901 (Tex. App.--Austin 1999, pet. filed). Political
subdivisions and their agencies enjoy a derived immunity based on agency principles and their
status as governmental units of the State. See Texas Workers' Compensation Comm'n v. City of
Eagle Pass, 14 S.W.3d 801, 803-04 (Tex. App.--Austin 2000, pet. filed); see also City of
Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994).

 Sovereign immunity consists of two concepts, immunity from suit and immunity
from liability. See Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). If the
governmental unit is immune from suit, a trial court lacks jurisdiction over a cause in which the
government is a defendant even if the government's liability is undisputed. See id. On the other
hand, even if a plaintiff obtains permission to sue, the government retains its affirmative defense
of immunity from liability as a protection against a judgment for damages. See id. When a
private party's rights are violated by a government official's illegal actions, that party may,
without seeking legislative consent, sue the government official to protect or determine the party's
rights against the State and the official. See Federal Sign, 951 S.W.2d at 404 (citing Cobb v.
Harrington, 190 S.W.2d 709 (Tex. 1945), and other cases in which plaintiffs sought injunctive
and declaratory relief). But an action to determine a party's rights is distinguished from a suit for
damages. See id. Even if the private party asserts that its rights have been violated, the party
must still obtain legislative consent to seek judgment against the State for damages. See id. at
405. (3)

 Miller alleged appellees violated article 47.01 and that this violation dispensed with
the need to establish permission to sue appellees. Assuming Miller could have brought an action
against appellees seeking declaratory or injunctive relief on this alleged violation without obtaining
legislative permission to sue, Miller sought no such relief. Instead Miller alleged that appellees'
agents had a duty to retain the subject truck and that these agents negligently released the truck,
breaching their duty and causing Miller's damages. (4)
 Miller sought a judgment against the Sheriff
and the County. Miller's allegations are the essence of a tort claim. See Firestone Steel Prods.
v. Barajas, 927 S.W.2d 608, 613 (Tex. 1996) (negligence cause of action consists of legal duty,
breach thereof, and damages proximately resulting therefrom). Merely alleging that appellees
violated the law did not relieve Miller of the necessity of obtaining legislative consent to sue
appellees for tort damages. See Federal Sign, 951 S.W.2d at 405.

 A party suing a governmental entity must allege and establish the State's consent
to suit via reference to a statute or to express legislative permission. See Jones, 8 S.W.3d at 638. 
The Tort Claims Act waives the government's immunity from suit to the extent the Act waives
immunity from liability. See Scott v. Prairie View A&M Univ., 7 S.W.3d 717, 719 (Tex.
App.--Houston [1st Dist.] 1999, pet. denied); Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021,
.025 (West 1997). But Miller has never argued that appellees' actions are of the type for which
the Act waives immunity. Relying on his violation-of-law argument, Miller did not allege or
establish that he had permission to sue appellees for damages.

 Because Miller did not establish legislative permission to sue appellees for damages
and because his violation-of-law contention does not extend to a suit for damages, appellees were
entitled to assert sovereign immunity. We overrule Miller's point of error.

 Further, appellees also moved for summary judgment on the basis that their
employees were entitled to the protection of official immunity, which in turn entitled appellees
to immunity from liability. Miller argues broadly that his action "is not a suit against the State
for purposes of immunity" without distinguishing sovereign and official immunity or addressing
the matter of immunity from liability. Because Miller does not expressly challenge this basis for
judgment on appeal, the judgment can rest on either ground. See Rogers, 772 S.W.2d at 79.


CONCLUSION


 We affirm the judgment of the trial court. (5)



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justice Kidd and Smith

Affirmed 

Filed: May 31, 2000

Do Not Publish

1. Miller sued Sheriff Dan Smith in his official capacity only. For convenience, we will refer
to Bell County and the Sheriff collectively as appellees and to appellant as Miller.
2. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 1997 & Supp. 2000). The
Tort Claims Act waives immunity from suit and liability for negligently caused damages in
certain, narrowly defined circumstances. See id. §§ 101.021, .025 (West 1997).
3. Miller's reliance on Terrell v. State, 588 S.W.2d 784 (Tex. 1979), is misplaced. In Terrell,
the supreme court was construing an exception under the Tort Claims Act's waiver of liability. 
See id. at 787-89. As noted, Miller did not bring this suit under the Act.
4. In effect, Miller argued that the Bell County officers owed him a statutorily created duty and
that the statute thus established their liability. Even if Miller's argument were true and appellees'
liability were not in dispute, appellees would retain immunity from suit. See Missouri Pac. R.R.
v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970); Texas Natural Resource
Conservation Comm'n v. IT-Davy, 998 S.W.2d 898, 901 (Tex. App.--Austin 1999, pet. filed)
(government retains immunity from suit even when liability is not in dispute). To waive sovereign
immunity, the legislature must use clear and unambiguous language. See Federal Sign v. Texas
S. Univ., 951 S.W.2d 401, 405 (Tex. 1997) (citing Duhart v. State, 610 S.W.2d 740, 742 (Tex.
1980)). Article 47.01 contains no such language. See Tex. Code Crim. Proc. Ann. art. 47.01
(West Supp. 2000).

5. Appellees did not file a plea to the jurisdiction or seek dismissal, and they do not suggest
on appeal that the trial court lacked subject matter jurisdiction. Their pleadings, motion, and
arguments on appeal support their defense below that they enjoy sovereign immunity from the
liability appellant seeks to establish in this suit. We have therefore treated their position as a
matter of immunity from liability as asserted in their pleadings rather than immunity from suit
requiring dismissal of Miller's suit and this appeal.


suit to the extent the Act waives
immunity from liability. See Scott v. Prairie View A&M Univ., 7 S.W.3d 717, 719 (Tex.
App.--Houston [1st Dist.] 1999, pet. denied); Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021,
.025 (West 1997). But Miller has never argued that appellees' actions are of the type for which
the Act waives immunity. Relying on his violation-of-law argument, Miller did not allege or
establish that he had permission to sue appellees for damages.

 Because Miller did not establish legislative permission to sue appellees for damages
and because his violation-of-law contention does not extend to a suit for damages, appellees were
entitled to assert sovereign immunity. We overrule Miller's point of error.

 Further, appellees also moved for summary judgment on the basis that their
employees were entitled to the protection of official immunity, which in turn entitled appellees
to immunity from liability. Miller argues broadly that his action "is not a suit against the State
for purposes of immunity" without distinguishing sovereign and official immunity or addressing
the matter of immunity from liability. Because Miller does not expressly challenge this basis for
judgment on appeal, the judgment can rest on either ground. See Rogers, 772 S.W.2d at 79.


CONCLUSION


 We affirm the judgment of the trial court. (5)



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justice Kidd and Smith

Affirmed 

Filed: May 31, 2000

Do Not Publish

1. Miller sued Sheriff Dan Smith in his official capacity only. For convenience, we will refer
to Bell County and the Sheriff collectively as appellees and to appellant as Miller.
2. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 1997 & Supp. 2000). The
Tort Claims Act waives immunity from suit and liability for negligently caused damages in
certain, narrowly defined circumstances. See id. §§ 101.021, .025 (West 1997).
3. Miller's reliance on Terrell v. State, 588 S.W.2d 784 (Tex. 1979), is misplaced. In Terrell,
the supreme court was construing an exception under the Tort Claims Act's waiver of liability. 
See id. at 787-89. As noted, Miller did not bring this suit under the Act.
4. In effect, Miller argued that the Bell County officers owed him a statutorily created duty and
that the statute thus established their liability. Even if Miller's argument were true and appellees'
liability were not in dispute, appellees would retain immunity from suit. See Missouri Pac. R.R.
v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970); Texas Natural Resource
Conservation Comm'n v. IT-Davy, 998 S.W.2d 898, 901 (Tex. App.--Austin 1999, pet. filed)