**ALL AMERICAN LIFE INSURANCE COMPANY; American General Life Insurance Company; American National Insurance Company; American National Life Insurance Company of Texas; IDS Life Insurance Company; and USLIFE Life Insurance Company, Appellants,**

v.

**Carol Keeton RYLANDER, Comptroller of Public Accounts of Texas; and John Cornyn, Attorney General of Texas, Appellees.**

No. 03–00–00427–CV.

Court of Appeals of Texas, Austin.

Aug. 30, 2001.

---

Barry Bishop, Clark, Thomas & Winters, Austin, for appellant.

William E. Storie, Assistant Attorney General, Taxation Division, Austin, for appellee.

Before Justices KIDD, B.A. SMITH and PURYEAR.

PURYEAR, Justice.

Several insurance companies sued the Comptroller and the Attorney General (collectively, "the State") to recover premium and maintenance taxes assessed by the Comptroller under the insurance code on internal rollover transactions. Tex. Ins. Code Ann. arts. 4.11 & 4.17 (West Supp. 2001). The district court entered a take-nothing judgment against the companies. The companies complain that the trial court did not properly construe the tax statutes. We will reverse the judgment, render judgment in part, and remand the case in part for further proceedings.

## BACKGROUND

We draw the following background from the district court's findings of fact, which are not challenged on appeal. *See Des Champ v. Featherston,* 886 S.W.2d 536, 541–42 (Tex.App.—Austin 1994, no writ) (unchallenged findings of fact binding on all parties).

The dispute in this case is over the Comptroller's decision to tax transfers of funds within a single company the same as premiums paid into the company. The "internal rollover" transactions involve holders of existing policies who decide they want a new insurance policy with the same company. To instigate the internal

rollovers, the policyholders submit applications and cash surrender forms to the companies indicating the amount of accumulation values—amounts policyholders have built up in their existing life-insurance polices—to apply toward the purchase of the new policy. The companies then apply the accumulation values to the purchase of the new policies, and the policyholders give up all rights under the original policies. The companies account for the accumulation values as premiums, but then net them out because the companies did not receive any new money.[1] The Comptroller, however, views the internal rollovers as purchases of new policies—with the rolled-over accumulation values being the consideration or premiums for the new policies—and assesses taxes on the rolled-over amounts the same as on other gross premiums collected.

After a trial de novo[2] to the court, the district court affirmed the Comptroller's characterization of the rolled-over accumulation values as gross premiums. The court concluded that the policyholders' surrender of rights and transfer of accumulation values under the original policy were consideration for the new policies.

The court rendered judgment that the companies take nothing by their suit to recover the taxes they paid on the rolled-over accumulation values.

## DISCUSSION

 Underlying all of the appellants' issues on appeal is one general issue: whether the trial court properly construed articles 4.11 and 4.17 of the Texas Insurance Code.[3] We will review *de novo* the district court's conclusions of law regarding the construction of these statutes. *Lopez v. Texas Workers' Comp. Ins. Fund,* 11 S.W.3d 490, 494 (Tex.App.—Austin 2000, pet. denied) (citing *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989); *Republic Western Ins. Co. v. State,* 985 S.W.2d 698, 701 (Tex.App.—Austin 1999, pet. dism'd w.o.j.)); *see also TeleVentures, Inc. v. Int'l Game Tech.,* 12 S.W.3d 900, 907 (Tex.App.—Austin 2000, pet. denied) (conclusions of law generally). Taxing statutes must be strictly construed against the taxing authority, resolving any ambiguity in favor of the taxpayer. *See First Nat'l Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 551 (Tex.Civ.App.—Austin

---

1. The companies adduced testimony that this procedure complied with the statutes and instructions they were given regarding the mechanics of reporting premiums. We repeat this for informational purposes, but our determination does not hinge on them. The companies never have counted the rolled-over amounts as premiums received on the annual statements that they are required to file with the Texas Department of Insurance ("the Department"). As part of the annual statement, insurers are required to complete Schedule T, a summary of gross premiums received for life insurance. The State did not require the companies to include internal rollovers as gross premiums received in Schedule T. The Department's accounting procedures require that companies treat internal rollovers as transfers of liabilities rather than receipts of premiums. The instructions on the tax forms from the Comptroller and the Department require the companies to report as gross premiums the same amounts they reported on their Schedule T.

The companies also adduced testimony that with internal rollovers coverage ran uninterrupted and contestability provisions that applied to new policies did not apply to the amounts rolled over.

The State adduced testimony that the Comptroller has consistently treated the rollovers as taxable gross premiums. The State also adduced testimony that, though no commissions were paid on straight rollovers, commissions were paid if the new policy had a higher face value.

2. *See* Tex. Tax.Code Ann. § 112.054 (West 1992).

3. Tex. Ins.Code Ann. arts. 4.11 & 4.17 (West Supp.2001).

1979, writ ref'd n.r.e.). We must try to give effect to the legislature's intent by looking to the plain and common meaning of the words of the statute. Tex. Gov't Code Ann. § 312.005 (West 1998); *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999); *Fulton v. Associated Indem. Corp.*, 46 S.W.3d 364, 370 (Tex. App.—Austin 2001, pet. filed).

■ The companies complain that the district court erred in concluding that internal rollovers should be taxed as gross premiums under articles 4.11 and 4.17. The premium tax provision states, "Every insurance carrier receiving premiums from the business of life insurance . . . shall pay to the comptroller a tax upon its gross premiums as provided in this article." Tex. Ins.Code Ann. art. 4.11, § 1 (West Supp.2001). " 'Gross premiums' are the total gross amount of all premiums, membership fees, assessments, dues, and any other considerations for such insurance received during the taxable year on each and every kind of such insurance policy . . . ." *Id.* § 2(c). The maintenance tax on gross premiums "may not exceed .04 percent of the correctly reported gross premiums of life, health, and accident insurance coverages and the gross considerations for annuity and endowment contracts collected" by life-insurance providers. *Id.* art. 4.17(a). By their first issue, the companies complain that assessment of a tax on the internal rollovers is erroneous because the funds rolled over were neither "received" nor "collected" during the taxable year; they also assert that the accounting procedures that the State requires support the companies' interpretation of the nature of the internally rolled-over funds. By their third issue, the companies contend that the rolled-over funds were not consideration for the new policies.

The State argues that the rolled-over funds were consideration received for the new policies and therefore were taxable. *See Taylor v. Bonilla*, 801 S.W.2d 553, 557 (Tex.App.—Austin 1990, writ denied) (policy value surrendered for new policy is consideration). The State also points to the companies' receipt of new promises, documents, and direction from the customers as consideration received by the companies. The State contends that the rollovers fall within the term "any other considerations" and are therefore gross premiums. The State views the rollover as essentially a barter transaction, and suggests that when the legislature intends to exclude bartered goods from taxation it does so expressly. *See* Tex. Tax Code Ann. § 151.007(c)(5) (sales price or receipts excludes value of tangible personal property taken in trade if it is type of property regularly sold by seller) & § 152.002(b)(5) (total consideration in car sale excludes value of car traded in). The State argues that the legislature's failure to expressly exclude rollover-transaction premiums demonstrates that they should be included gross premiums.

We conclude that the State's taxation of the rolled-over amounts as consideration received or collected is at odds with the statute. Because the statutes do not define the words "receive" and "collect," we look to the ordinary meanings of the words. "Receive" means "to take possession or delivery of" or "to knowingly accept." Webster's Third New International Dictionary 1894 (1986). "Collect" means "to receive, gather, or exact from a number of persons or other sources." *Id.* at 444. Both connote a transfer of something from without to within, a taking from an external source. The accumulation values of the old policies were within the companies in the customers' life-insurance policies, belonged to the policyholders while held by the companies, and remained with-

in the companies in the customers' new life-insurance policies after the rollovers.[4] Regardless of whether the accumulation values were consideration for the new policies, the companies did not "receive" or "collect" them when rolling them into the new policies.

▮ The State argues that the companies received consideration in the form of new promises and authorizations to roll over the accumulation values. Assuming this is so does not alter our conclusion. The insurance code authorizes taxation of consideration received or collected, but does not authorize taxation of all value associated with consideration received. Though the accumulation values were associated with these new promises, as discussed above, the companies did not receive or collect the accumulation values when conducting the rollovers. Assuming the rolled-over accumulation values are consideration, they are not taxable when rolled over internally because the companies did not receive or collect them.

This opinion applies only to internal rollovers. As the companies concede, the internal rollovers are easily distinguished from "external rollovers" in which the accumulation values are paid to the policyholder and used to purchase a policy from a different company. That is a taxable event because the new issuing company has added a new policy and policyholder from which it receives or collects premiums. A similar taxable event occurs when

a policy is terminated, a company pays out accumulation values, and the customer subsequently uses the payout to buy a new policy from the same company; once the accumulation value is paid out, the company receives or collects it when the customer returns it to the company.

We resolve the first issue in favor of the companies. We need not consider the remaining issues because their resolution would not change the result. *See* Tex. R.App.P. 47.1(a).

## CONCLUSION

We reverse the district court's take-nothing judgment against the companies and render judgment that the State refund the taxable amounts. Because the amounts taxed and paid are liquidated, we can remand the damages aspect of this case even though liability was contested. *See* Tex.R.App. P. 44.1(b). We remand the cause for determination of the amounts for the Comptroller to refund and for rendition of judgment accordingly.

▮

4. The State analogizes the rollover to a bank customer writing a check to pay for a loan from the same bank; the State argues that the bank has collected or received the loan payment even though the transaction occurred entirely within the bank. We conclude this analogy mischaracterizes the rollovers. We find the internal rollovers to be more like a bank customer moving funds from one type of checking account to another; instead of reducing both the checking (liability) and loan (asset) balances as in the State's example, the bank's balances are unchanged—the only change is the provisions of the customer's checking account. Similarly, the insurance companies retain the accumulation values, while modifying the terms of how those values will be handled in the future.