# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00446-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Metropolitan Life Insurance Company, Northwestern Mutual Life Insurance Company, Massachusetts Mutual Life Insurance Company, and the Mutual Life Insurance Company of New York, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-90-484,745, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

The Comptroller of Public Accounts of the State of Texas and the Attorney General of the State of Texas (collectively, "the Comptroller"), in their official capacities, appeal from the trial court's order granting summary judgment in favor of appellees Metropolitan Life Insurance Company, Northwestern Mutual Life Insurance Company, Massachusetts Mutual Life Insurance Company, and the Mutual Life Insurance Company of New York (collectively, "the Insurers").[1] The Insurers brought a tax-protest suit seeking a refund of certain insurance premium and maintenance taxes paid to the State of Texas from 1989 through 2003. Both parties filed motions for summary judgment, and the trial court granted the Insurers' motion, ordering the Comptroller to

---

[1] We substitute Susan Combs, in her official capacity, as successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas. *See* Tex. R. App. P. 7.2.

issue a refund for the taxes in question.[2]  We reverse the trial court's judgment and render summary judgment in favor of the Comptroller.

## BACKGROUND

The present dispute is governed by former articles 4.11 and 4.17 of the Texas Insurance Code.  *See* Act of July 3, 1984, 68th Leg., 2d C.S., ch. 31, art. 4, § 1, 1984 Tex. Gen. Laws 215, 216, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (hereinafter cited as Former Tex. Ins. Code Ann. art. 4.11); Act of May 15, 1987, 70th Leg., R.S., ch. 249, § 5, 1987 Tex. Gen. Laws 1558, 1561, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (hereinafter cited as Former Tex. Ins. Code Ann. art. 4.17).[3]

From 1989 to 2003, the Insurers paid insurance premium and maintenance taxes in connection with the sale of life insurance policies.[4]  Former article 4.11 of the insurance code imposed a premium tax on carriers receiving premiums from certain types of insurance, including life insurance.  *See* Former Tex. Ins. Code Ann. art. 4.11.  Specifically, the premium tax was imposed on:

> the total gross amount of all premiums, membership fees, assessments, dues, and any
> other considerations for such insurance received during the taxable year . . . , but

---

[2]  The trial court denied the Insurers' request for attorneys' fees.

[3]  The insurance premium and maintenance taxes have been codified in chapters 222 and 257, respectively, of the insurance code.  *See* Tex. Ins. Code Ann. §§ 222.001-.008, 257.001-.004 (West 2009).  Former articles 4.11 and 4.17 were effective at all times relevant to the present dispute, and were not amended in any manner bearing on our analysis.

[4]  The Insurers also sold a smaller number of health and annuity insurance policies.  The parties agree that these polices are substantively identical to the life insurance policies for purposes of the present case.

deducting returned premiums, any dividends applied to purchase paid-up additions to insurance, or to shorten the endowment of premium payment period, and excluding those premiums received from insurance carriers for reinsurance and there shall be no deduction for premiums paid for reinsurance.

*Id.*

Similarly, former article 4.17 imposed an annual maintenance tax on "the correctly reported gross premiums of life, health, and accident insurance coverages, and the gross considerations for annuity and endowment contracts collected by all authorized insurers writing life, health, and accident insurance, annuity, or endowment contracts in this State." *Id.* art. 4.17.

The Insurers provided life insurance policies under form contracts, which required the policyholder to pay a fixed annual premium in order to maintain the full benefit of the policy. The Insurers set these annual premiums higher than they anticipated would be necessary to pay claims and other expenses and meet reserve requirements, so that the company could expect to be left with a surplus at the end of each year. The contracts provided that a portion of this divisible surplus would be paid as dividends to the policyholders on the policy anniversary date. Each policyholder could elect to receive these dividends in one of the following ways: (1) receiving payment in cash; (2) using the dividends to purchase additional insurance as part of the same policy, referred to as "paid-up additions to insurance"; (3) allowing the dividends to accumulate with interest; or (4) applying the dividends to renewal premium payments. The present appeal involves the taxable nature of those dividends that were applied to renewal premium payments at the request of the policyholder.

The Comptroller has consistently taken the position that dividends applied to renewal premium payments are taxable under former articles 4.11 and 4.17 as gross premiums received or

3

collected. *See id.* art. 4.11 (imposing premium tax on "total gross amount of all premiums . . . *received* during the taxable year") (emphasis added); *id.* art. 4.17 (imposing maintenance tax on "the correctly reported gross premiums . . . *collected* by all authorized insurers") (emphasis added). The Insurers, on the other hand, assert that such dividends are not received or collected by the company and therefore are not subject to tax. The Insurers paid premium and maintenance taxes on dividends applied to renewal premium payments under protest from 1989 to 2003, ultimately filing the present suit to seek a refund for the amounts paid, a total of $10,817,043.00, plus interest. Both parties filed motions for summary judgment, and the trial court granted the Insurers' motion, ordering the Comptroller to issue a refund of the taxes paid under protest. This appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issue, and the trial court grants one motion and denies the other, the appellate court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id.*

The question of whether the Insurers are entitled to a refund of gross premiums and maintenance taxes turns solely on an issue of statutory construction. Statutory construction is a legal question that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we are required, first and foremost, to follow the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007,

4

no pet.). "If a statute is clear and unambiguous, it should be given its commonly understood meaning without resort to extrinsic aids of statutory construction." *Id.* We read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume that words excluded from the statute are done so purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993).

Statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer, while statutory exemptions and deductions from taxation are considered "matters of legislative 'grace,'" and are strictly construed against the taxpayer. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied). In the present case, the Comptroller argues that the statute should be construed strictly against the Insurers because they are seeking to invoke a deduction from the tax base. The Insurers, on the other hand, assert that they are not seeking a deduction because the dividends at issue in this suit should never have been included in the tax base in the first place and therefore no deduction is necessary. Because we agree with the Comptroller's position that the premiums at issue must be included in the tax base and are therefore taxable absent a statutory provision authorizing a deduction or exemption, we will construe the statute strictly against the Insurers. *See id.*

**DISCUSSION**

In a single issue on appeal, the Comptroller argues that the trial court erred in interpreting former articles 4.11 and 4.17 of the insurance code to conclude that the Insurers were

5

entitled to a refund of premium and maintenance taxes paid on dividends applied to reduce renewal premium payments. According to the Comptroller, these dividends were received as premiums and therefore must be included in the tax base. *See* Former Tex. Ins. Code Ann. art. 4.11 (imposing premium tax on "total gross amount of all premiums . . . *received* during the taxable year") (emphasis added). The Insurers argue that the dividends were never "received" by the Insurers because they were held by the company in surplus before they were declared, and remained with the company after they were declared and applied to the renewal premium amounts due. The parties agree that if the dividends applied to reduce premiums were "received" under former article 4.11, they were also "collected" under former article 4.17. *See id.* art. 4.17 (imposing maintenance tax on "the correctly reported gross premiums . . . *collected* by all authorized insurers") (emphasis added). As a result, we will focus our analysis on whether dividends applied to renewal premium payments are premiums "received" under former article 4.11.

Because this appeal turns solely on an issue of statutory construction, "we look first and foremost to the words of the statute." *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). Former article 4.17 provided, in relevant part, for a tax on "the total gross amount of all premiums . . . received during the taxable year . . . , but deducting returned premiums, any dividends applied to purchase paid-up additions to insurance, or to shorten the endowment or premium payment period." Former Tex. Ins. Code Ann. art. 4.17. As the Comptroller points out, the legislature specifically included a deduction for dividends used to purchase additional insurance. *See id.* Because we assume that every word in a statute has meaning, we must assume that the legislature intended such dividends to be considered "received" by an insurer, or else there would be no need for statutory language allowing them to be deducted from the tax base. Dividends used

to purchase additional insurance, like dividends applied to renewal premium payments, are essentially paper transactions in which the dividend is not physically returned to the policyholder and no money exchanges hands between the parties. While the Insurers contend that dividends applied to renewal premium payments are not "received" because these payments are handled internally without physically transferring the dividends to the policyholder, dividends used to purchase additional insurance are processed in the same way. Therefore, the fact that the legislature chose to treat dividends applied to the purchase of additional insurance as premiums "received" under former article 4.17 indicates that dividends applied to renewal premium payments should also be considered premiums "received."

Having determined that both dividends applied to the purchase of additional insurance and dividends applied to renewal premium payments are "received" under former article 4.17, we find it significant that the legislature created an express deduction for dividends applied to the purchase of additional insurance, but did not create a similar deduction for dividends applied to renewal premium payments. "[E]very word excluded from a statute must . . . be presumed to have been excluded for a purpose. Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Therefore, where there is an express deduction for dividends used to purchase additional insurance, the omission of a similar deduction for dividends applied to renewal premium payments suggests that the legislature did not intend to allow such dividends to be deducted.

We note also that this interpretation of the statute does not lead to an absurd result, as the legislature may well have intended to tax the fixed amount of premium contracted for in the

7

policy, regardless of how it is paid and regardless of how policy dividends are used. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (stating that legislative intent must be discerned from plain language of statute, "unless enforcing the plain language of the statute as written would produce absurd results"); *see also Moore*, 845 S.W.2d at 823 ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.").

The Insurers contend that the absence of statutory language allowing a deduction for dividends applied to renewal premium payments is not significant because such premiums are not "received" by the company in the first place and therefore need not be deducted. The Insurers pose a hypothetical in which an insured purchases a policy with a stated premium of $100 per year. In this hypothetical, the insured pays $100 in year one, then receives a dividend of $10 at the end of the year, which the insured elects to apply to renewal premium payments, so that he pays only an additional $90 in year two. According to the Insurers, the company has only "received" a total of $190 from the insured in years one and two, but will be taxed, based on the Comptroller's interpretation of former article 4.11, as if it had received $200 in gross premiums. What the Insurers' argument overlooks, however, is that in this hypothetical, the company has also received the $10 dividend amount, which otherwise would have been paid to the insured according to the terms of the contract. There is no practical distinction between a scenario in which the $10 dividend is paid to the insured in cash and then used by the insured to pay the $100 premium in year two, and a scenario in which the insured uses his $10 dividend to offset the $100 premium in year two, and then provides an additional $90. Under either scenario, the insurance company gets $100 from the insured in year two. The dividend belongs to the insured, so when the insured elects to use

8

that $10 to pay a renewal premium, the insurer "receives" $10 that would have otherwise gone to the insured.

In support of their position, the Insurers cite *All American Insurance Co. v. Rylander*, 73 S.W.3d 299 (Tex. App.—Austin 2001, pet. denied), and emphasize this Court's statement that the word "received" in former article 4.11 and the word "collected" in former article 4.17 "connote a transfer of something from without to within, a taking from an external source." 73 S.W.3d at 302. According to the Insurers, there is no transfer "from without to within" for dividends applied to renewal premium payments because the company merely credits the policyholder's account for the amount of the dividend and then bills the policyholder for the reduced premium. We disagree. The dividend, when it is declared, belongs to the policyholder, as required to satisfy the company's contractual obligation to pay dividends when available. The dividend is then applied to the renewal premium payment, to satisfy the policyholder's contractual obligation to pay a fixed annual premium. While it is true that the cash value of the dividend is not physically transferred to the policyholder and back again, the practical effect is the same. This is distinguishable from the "internal rollover" transactions at issue in *All American*, in which a policyholder purchases a substitute insurance policy from the same company by rolling over the accumulated cash value of the existing policy into the new policy. *See id.* at 300-01. This Court compared the internal rollover transaction to a bank customer moving funds from one type of checking account to another, stating, "[T]he bank's balances are unchanged—the only change is the provisions of the customer's checking account. Similarly, the insurance companies retain the accumulation values, while modifying the terms of how those values will be handled in the future." *Id.* at 303 n.4. As this language suggests, the internal rollover transactions at issue in *All American* merely represented the transfer of

9

accumulated cash values from one form to another, and did not involve premiums "received" or "collected" that would be subject to premium or maintenance tax. *See id.* at 303. The transferred amounts did not change in character, as they were held by the companies on behalf of the policyholders both before and after the rollover. *See id.* at 302-03 ("The accumulation values of the old policies were within the companies in the customers' life-insurance policies, belonged to the policyholders while held by the companies, and remained within the companies in the customers' new life-insurance policies after the rollovers.").

In the present case, on the other hand, the dividend amounts were originally characterized as surplus belonging to the Insurers, were then recharacterized as dividends belonging to the policyholders but held by the Insurers on their behalf, and were finally received by the Insurers in the form of renewal premium payments. We conclude that these changes in character, necessary for the purpose of fulfilling contract obligations, are sufficient to satisfy the "from without to within" definition of "received" described in *All American. See id.* at 302. In order to adopt the Insurers' reasoning that the dividend amounts simply remained part of the company's surplus until they were subtracted from the renewal premium amount owed by the policyholders, we would have to conclude that the Insurers failed to fulfill their contractual obligation to pay dividends and that the policyholders failed to fulfill their contractual obligation to pay the fixed-rate renewal premiums set forth in their insurance policy. We cannot ignore the structure of this transaction, which differs significantly from the internal rollovers in *All American. See id.* at 303 ("This opinion applies only to internal rollovers.").[5]

---

[5] The Comptroller presented summary-judgment evidence that the Insurers routinely report dividends applied to pay renewal premiums as a separate line item in their National Association of Insurance Commissioners (NAIC) annual statements, while internal rollover amounts are not

10

Based on the plain language of the statute, we hold that dividends applied to reduce renewal premium payments are "received" under former article 4.11 and "collected" under former article 4.17 of the insurance code, and are therefore subject to insurance premium and maintenance taxes for the years at issue in this appeal. As a result, the trial court erred in granting summary judgment in favor of the Insurers and ordering that they be issued a refund for the taxes paid under protest.

## CONCLUSION

We reverse the trial court's order and render judgment that the Insurers are not entitled to a refund of insurance premium or maintenance tax paid in connection with dividends applied to renewal premium payments.

_____

Diane M. Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson
  Chief Justice Law Not Participating[6]

Reversed and Rendered

Filed: October 9, 2009

_____

reported separately. However, as we stated in *All American Life Insurance Co. v. Rylander*, 73 S.W.3d 299, 301 n.1 (Tex. App.—Austin 2001, pet. denied), our determination does not hinge on internal accounting procedures.

  [6] Because Chief Justice Law was originally assigned to author this opinion, authoring duties were reassigned as of August 26, 2009.