# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00492-CV

**W. Robert Brown, Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and
Ken Paxton, Attorney General of the State of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. D-1-GN-11-000338, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

W. Robert Brown purchased an aircraft from CMB Sales, Inc. Over four years later, the Comptroller of Public Accounts alleged that Brown failed to pay the applicable taxes for the transaction and imposed an assessment for the delinquent taxes. Brown challenged the assessment, but the Comptroller affirmed the assessment. After the Comptroller made his final determination, Brown paid the taxes under protest and filed suit in district court challenging the propriety of the assessment. Brown and the Comptroller[1] filed competing motions for summary judgment, and the district court granted the Comptroller's motion but denied Brown's motion. In two issues on appeal, Brown contends that the district court erred by granting the Comptroller's motion and by denying

---

[1] For ease of reading, we will refer to all of the appellees as the Comptroller. In addition, we substitute Glenn Hegar, in his official capacity, as successor to Susan Combs as Comptroller of Public Accounts and Ken Paxton, in his official capacity, as successor to Greg Abbott as Attorney General. *See* Tex. R. App. P. 7.2(a).

his. We will reverse the district court's granting of the Comptroller's motion and remand the case for further proceedings.

**BACKGROUND**

Brown purchased an airplane from CMB in April 2003, and neither Brown nor CMB paid any State taxes pertaining to the transaction. In October 2007, the Comptroller determined that the sale was a taxable transaction and sent a tax-deficiency assessment to Brown. The assessment sought payment for the taxes and interest allegedly owed and imposed a penalty for the failure to pay the taxes at issue. After receiving the assessment, Brown requested a redetermination hearing and argued that the sale of the airplane was exempt from taxation and that the assessment was barred because it was imposed beyond the four-year statute of limitations. *See* Tex. Tax Code §§ 151.509-.511 (governing redetermination hearings). During the redetermination proceeding, the parties stipulated to the following facts:

1. Brown purchased the aircraft on April 25, 2003.

2. The seller of the aircraft was CMB.

3. No tax was paid on the sale of the aircraft.

4. Brown did not have a sales tax permit at the time of the sale of the aircraft.

5. CMB held a sales tax permit at the time of the sale of the aircraft.

6. CMB filed a quarterly sales tax return for the second quarter of 2003, the period including the date of the sale of the aircraft, stating that "0" amount was subject to tax.

7. The aircraft's bill of sale was recorded with the Federal Aviation Administration on June 18, 2003.

2

8. The assessment, dated October 30, 2007, sought $13,350 in sales tax on the purchase of the aircraft, exclusive of penalty and interest. The assessment was issued over four years and six months after the date of the sale of the aircraft.

9. CMB was organized as a Texas corporation in 1996. Robert Sharpe was on the Board of Directors and was president.

10. CMB filed for dissolution with the Secretary of State on August 9, 2004, approximately one year and three months after the sale of the aircraft. Mr. Sharpe signed the Articles of Dissolution as president of CMB.

11. The aircraft was the only aircraft CMB had for sale at the time Brown purchased the aircraft.

12. The aircraft was the only aircraft CMB ever sold.

During the proceeding, Brown argued that the sale was exempt from taxation under section 151.304 of the Tax Code, which exempts the occasional sale of a taxable item. *See id.* § 151.304. After considering the evidence presented by the parties, the administrative law judge determined that Brown failed to meet his burden of proving his entitlement to "the occasional sale exemption." In the proceeding, Brown also argued that the assessment was barred by the four-year statute of limitations set out in section 111.201 of the Tax Code. *See id.* § 111.201. However, the administrative law judge determined that an exception to the statute of limitations applied. *See id.* § 111.205. That exception states that the statute of limitations "does not apply" when no tax report was filed. *Id.* § 111.205(a)(2). Moreover, the administrative law judge determined that Brown was required to but did not file a use-tax report. *See id.* § 151.403(c). Accordingly, the administrative law judge rejected Brown's assertion "that the assessment was barred by the four-year limitations period."

After the administrative law judge issued his proposal for decision, the Comptroller adopted the proposal. Upon learning that the Comptroller adopted the proposal, Brown paid the

amount owed ($21,228.61) under protest, *see id.* § 112.051 (requiring that taxes be paid along with protest in order to challenge tax imposed), and filed a suit in district court seeking a refund, *see id.* § 112.052 (authorizing suit to recover tax paid under protest); *see also id.* § 112.054 (providing that trial is de novo).  After filing his suit, Brown filed a motion for summary judgment arguing that the sale of the aircraft was exempt from taxation as an occasional sale and that the assessment was barred by the statute of limitations.  In response, the Comptroller filed a motion for summary judgment arguing that the sale of the airplane was not an occasional sale and that the statute of limitations did not apply because Brown did not file a tax report.[2]

After considering the parties' motions, the district court granted the Comptroller's motion for summary judgment and denied Brown's motion for summary judgment.

## STANDARD OF REVIEW

Appellate courts review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  In performing this review, appellate courts take as true all of the evidence favorable to the non-moving party and indulge every reasonable inference and resolve all doubts in the non-moving party's favor.  *Id.*  To prevail on a traditional summary-judgment motion, the movant must demonstrate that there are no genuine

---

[2] The Comptroller's motion is referred to as a traditional and a no-evidence motion for summary judgment.  *See* Tex. R. Civ. P. 166a.  Although the motion sets out the reasons for why the Comptroller believed that he was entitled to summary judgment in his favor and includes affidavits and other exhibits that are referred to in support of the Comptroller's arguments, the motion does not "state the elements as to which there is no evidence" and as to which Brown "would have had the burden of proof at trial." *See id.* R. 166a(i) (setting out requirements for no-evidence motion). Accordingly, we will treat the motion as a traditional one. *See Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660, 673 n.13 (Tex. App.—Fort Worth 2010, no pet.).

issues of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). If the movant satisfies this initial burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014). Where, as here, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

If both parties move for summary judgment on the same issues and if the trial court grants one motion and denies the other, reviewing courts consider the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered if the court determines that the trial court erred. *Dorsett*, 164 S.W.3d at 661. However, if the reviewing court determines that a fact issue precludes summary judgment for either party, it remands the case for trial. *University of Tex. Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987); *Garrett Operators, Inc. v. City of Houston*, 461 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Some of the issues presented in this case involve statutory construction, which is a question of law that is reviewed de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). When construing a statute, "the primary objective is to give effect to the Legislature's intent as expressed in the statute's language." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Words that are not defined are given their ordinary meaning unless a different meaning "is apparent from the

5

context" or unless the ordinary meaning "leads to absurd results." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *see Galbraith*, 290 S.W.3d at 867 (explaining that if "the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning"). Courts "generally avoid construing individual provisions of a statute in isolation from the statute as a whole." *Texas Citizens*, 336 S.W.3d at 628. "Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012). On the other hand, tax exemptions are strictly construed against the claimant, *AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831, 837 (Tex. 2012); *Bullock v. National Bancshares Corp. of Tex.*, 584 S.W.2d 268, 271-72 (Tex. 1979), and the claimant "bears the burden of 'clearly showing' that it falls within the statutory exemption," *Texas Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 140-41 (Tex. 2015) (quoting *North Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)).

When the language of a statute or agency rule is ambiguous and when there is room for policy determinations, courts generally defer to an administrative agency's construction of its own statutory authority and rules as long as the construction is reasonable and does not conflict with the language of the statute or rule. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Texas Citizens*, 336 S.W.3d at 624; *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied). *But see TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns*, 397 S.W.3d 173, 182-83 (Tex. 2013) (explaining that "agency deference does not displace strict construction when the dispute is not over how much tax is due but, more fundamentally, whether the tax applies at all").

6

**DISCUSSION**

In two issues on appeal, Brown asserts that the district court erred by failing to grant his motion for summary judgment and by granting the Comptroller's motion for summary judgment. In particular, Brown urges that the taxes assessed were barred by the statute of limitations and that if the assessment was not barred, the transaction was exempt from taxation as an occasional sale.

**Statute of Limitations**

As mentioned above, the Tax Code contains a general four-year statute of limitations that provides that "[n]o tax imposed by this title may be assessed after four years from the date that the tax becomes due and payable." Tex. Tax Code § 111.201; *see Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 61 (Tex. App.—Austin 1995, writ denied) (explaining that "tax is imposed at the time of sale on sales of personal property, including aircraft"). Moreover, the Code clarifies that "[i]n determining the beginning date for a period of limitation provided in this title, the date that a tax is due and payable is the day after the last day on which a payment is required by the chapter of this title imposing the tax." Tex. Tax Code § 111.204. In addition, the Code specifies as follows:

> A notice of a deficiency determination must be personally served or mailed within the period provided by Subchapter D, Chapter 111 of this code after the last day of the calendar month following the close of the regular reporting period of the taxpayer for which the amount is proposed to be determined or within the period provided by Subchapter D, Chapter 111 of this code after the report is filed, whichever period expires the later.

*Id.* § 151.507(a).

In light of the preceding and in light of the undisputed fact that the aircraft was sold on April 25, 2003, Brown urged that the "[l]ast day of the calendar month following the

CMB second quarter Sales Tax Return" was July 31, 2003, and that the "[f]our year limitations expiration date" was July 31, 2007. However, Brown noted that the assessment letter was not sent until October 30, 2007, which was three months after the limitations period passed.[3] Although Brown acknowledged that the Tax Code specifies that the statute of limitations does not apply when no tax report has been filed, *see id.* § 111.205(a)(2), he asserted that the exception did not apply because CMB filed a quarterly sales tax return in 2003 regarding the sale of the airplane. In other words, Brown argued that the exception applies only when no report is filed and that if a report is filed, regardless of who filed it, the exception cannot apply. Accordingly, Brown urged that the exception did not apply in this case.

In his motion for summary judgment, the Comptroller acknowledged that the limitations period had run but argued that the exception discussed above applied. *See State v. Barbee*, No. 03-99-00560-CV, 2000 Tex. App. LEXIS 3916, at *7 (Tex. App.—Austin June 15, 2000, pet. denied) (noting that "four-year limitations period is tolled indefinitely in certain situations"). The occasional-sale exception found in section 111.205 provides that the limitations period "does not apply and the comptroller may assess a tax imposed by this title at any time if . . . no report for the tax has been filed." Tex. Tax Code § 111.205(a)(2). Although the Comptroller recognized that CMB filed a tax return, he contended that the sales-tax report filed by CMB could not have satisfied the obligation because the transaction was subject to use tax and not sales tax. Specifically, he argued that Brown was obligated to pay use tax for his acquisition of the airplane because the sale

---

[3] As support, Brown pointed to an exhibit attached to the Comptroller's motion for summary judgment where an employee entered into the Comptroller's records that July 31, 2007, "is the statute of limitations date."

8

occurred outside of Texas and because Brown transported the plane to Texas for use. *Compare id.* § 151.051 (imposing sales tax "on each sale of a taxable item in this state"), *with id.* § 151.101(a) (stating that "[a] tax is imposed on the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use, or other consumption in this state"), *and id.* § 151.102 (explaining that "person storing, using, or consuming a taxable item in this state is liable for" use tax). Further, the Comptroller urged that because Brown owed use tax, he was required to file a tax report under section 151.403, which provides that "[a] person who acquires a taxable item, the storage, use, or consumption of which is subject to the *use* tax, shall file a tax report if the person did not pay the use tax to a retailer." *See id.* § 151.403(c) (emphasis added); *see also id.* § 151.403(a) (stating that "[a] person subject to the sales tax shall file a tax report"); *cf.* Comptroller Hearing No. 36,437, STAR Document No. 9805649H (May 20, 1998) (determining that purchaser was required to file use-tax report under section 151.403 and that failure to file report fell under no report exception to statute of limitations). Because Brown did not file a use-tax report, the Comptroller contended that the statute-of-limitations did not apply. As further support for the idea that Brown was obligated to file a report, the Comptroller noted that the rule interpreting the exceptions to the statute of limitations, Rule 3.339, explains that the statute of limitations "does not apply" if "the *taxpayer* fails to file a" return. 34 Tex. Admin. Code § 3.339(a)(2)(B) (2015) (Comptroller of Pub. Accounts, Statute of Limitations) (emphasis added).

Although Brown agreed that section 151.403 of the Tax Code imposes a reporting requirement and obligates a person to file a use-tax report if he did not pay use tax to a retailer, *see* Tex. Tax Code § 151.403(c), he urged that the provision does not state that the failure to comply

constitutes an exception to the statute of limitations. Regarding Rule 3.339, Brown insisted that the rule is not entitled to any deference and is invalid because it impermissibly broadened the statutory language from "no report for the tax has been filed," *id.* § 111.205(a)(2), to "the taxpayer fails to file a" return, 34 Tex. Admin. Code § 3.339(a)(2)(B). *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001) (stating that agency may not "exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes"); *Combs v. Metropolitan Life Ins. Co.*, 298 S.W.3d 793, 796 (Tex. App.—Austin 2009, pet. denied) (explaining that agency construction is entitled to serious consideration provided that construction is reasonable and does not contradict statute's plain language); *see also* Tex. Tax Code § 111.002 (allowing Comptroller to adopt rules that do not conflict with statutes); 34 Tex. Admin. Code § 1.1(d) (2015) (Comptroller of Pub. Accounts, Intent, Scope, and Construction of Rules) (providing that promulgated rules will not be construed to limit or repeal rights under governing law). Accordingly, Brown contended that the Comptroller was limited to the statutory language of the exception as it appeared in section 111.205 and that the exception did not apply because CMB filed a tax report.

As an initial matter, we note that the language of the no-report exception specifies that the statue of limitations does not apply when "no report for the tax has been filed," *see* Tex. Tax Code § 111.205(a)(2), but the provision does not expressly state that the filing of a tax report pertaining to the time in which a taxable transaction occurs will prohibit the limitations exception from being applied to an individual who did not file a report and who would otherwise owe taxes because of the transaction.

10

In construing the no-report exception, we are guided by the language in the other exceptions in section 11.205 as well as the language in the Tax Code provision explaining which individuals are required to file tax reports. *See Texas Citizens*, 336 S.W.3d at 628 (discussing manner in which statutes are construed). Regarding the other exceptions to the statute of limitations, those exceptions focus on the need for having tax reports that are accurate and provide that the filing of a report does not toll the statute of limitations if there is a mistake in the report. *See* Tex. Tax Code § 111.205(a)(1), (3). More specifically, a filed report will not toll the statute of limitations if the report is "false or fraudulent" or "contains a gross error." *Id.* In light of these statutory concerns, it seems reasonable to conclude that the legislature did not intend for the statute of limitations to bar recovery when a report is filed by someone other than the person who allegedly owes the taxes at issue, particularly in the circumstances present in this case where the filed report does not accurately reflect that a taxable transaction occurred.

In addition to focusing on the accuracy of a filed report, the first exception, which pertains to "false or fraudulent" reports, clarifies who is obligated to file a report. Specifically, the provision states that the applicable reports are those filed by a "taxpayer." *Id.* § 111.205(a)(1). That clarification in the first subsection is some indication that the legislature intended the next two subsections to apply to circumstances in which a *taxpayer* files an erroneous report or fails to file a report at all. Similarly, the provision of the Tax Code discussed above setting out "Who Must File a [Tax] Report" specifies that taxpayers have the obligation to file tax reports. *Id.* § 151.403. In particular, the provision provides that "[a] person subject to the sales tax shall file a tax report" and that "[a] person who acquires a taxable item, the storage, use, or consumption of which is subject to the use tax, shall file a tax report." *Id.* § 151.403(a), (c).

11

Furthermore, we believe that the interpretation proffered by Brown in which a report filed by someone other than the taxpayer prohibits the tolling of the statute of limitations could lead to negative consequences. *See* Tex. Gov't Code § 311.023(5) (explaining that courts may consider consequences of particular construction when construing statute). In particular, the construction could allow an individual who owes taxes to avoid liability by having the other party to the transaction start the running of the limitations period by filing a tax report for the applicable period of time and deliberately conceal that a taxable event occurred. Perhaps more troubling, Brown's construction of subsection 111.205(a)(2) as allowing the limitations period to apply when any tax report is filed could potentially allow for a tax report filed by a stranger to a transaction to foreclose the ability of the Comptroller to collect taxes owed.

In light of the focus that the legislature placed on the obligation of taxpayers to file tax reports and on ensuring the accuracy of a filed report, we believe that the no-report exception is properly construed as meaning that the statute of limitations "does not apply and the comptroller may assess a tax imposed by this title at any time if" the taxpayer does not file a tax report. *See* Tex. Tax Code § 111.205(a)(2). Accordingly, the Comptroller's interpretation of the exception, which comports with the construction above and is evidenced in Rule 3.339, is reasonable and is consistent with the relevant governing statutes. *See Metropolitan Life Ins. Co.*, 298 S.W.3d at 796.

Having determined that subsection 111.205(a)(2) provides that the limitations period is tolled when the taxpayer does not file a report, we must now address whether the evidence presented by both parties established that there are no genuine issues of material fact regarding whether Brown was obligated to file a tax report. As discussed above, section 151.403 of the Tax

12

Code requires that "[a] person subject to the sales tax shall file a tax report" and that "[a] person who acquires a taxable item, the storage, use, or consumption of which is subject to the use tax, shall file a tax report if the person did not pay the use tax to a retailer." Tex. Tax Code § 151.403(a), (c).

When arguing that he was entitled to summary judgment, the Comptroller asserted that Brown was obligated to file a report regarding the sale of the airplane because he owed use taxes on the purchase. Specifically, the Comptroller urged that Brown purchased the plane outside of Texas for use in Texas. As support for the idea that the transaction occurred outside of Texas, the Comptroller referred to the deposition from CMB's former vice president, Murray Holland, which was attached to the Comptroller's motion for summary judgment. When describing the sale in his deposition, Holland stated that Brown called him about buying the plane, that the plane was in Alabama at the time because he had stopped there for repairs, and that Brown bought the plane in Alabama. In addition, Holland recalled that CMB did not collect any taxes from Brown and that no discussions regarding taxes occurred.

In his response to the Comptroller's motion, Brown urged that he was not obligated to file a tax report because the transaction occurred in Texas. Accordingly, Brown argued that the transaction was subject to sales tax and that CMB was the party obligated to file the tax report and did, in fact, file one. As support for his assertion that the sale occurred in Texas, Brown attached to his response a sworn affidavit from himself. In his affidavit, Brown averred that he "purchased the aircraft at issue in this case *in Texas*." Moreover, he stated that he searched for that type of plane on the Internet and found an ad saying that one was for sale and "hangared at Dallas Love Field." Further, Brown explained that although the plane was in Alabama and was having a new engine

13

installed when he first talked to Holland about buying the plane, the plane was flown to Houston for an inspection. Finally, Brown recalled that he purchased the plane while it was in Houston.

Given the preceding, we must conclude that there is a genuine issue of material fact regarding whether the transaction occurred in Texas or in Alabama and, therefore, whether Brown was obligated to file a use-tax report concerning his purchase of the aircraft. *See Garrett Operators*, 461 S.W.3d at 590.

In an alternative set of arguments, the Comptroller urged in his motion for summary judgment and in his response to Brown's motion for summary judgment that even if the sale occurred in Texas, the four-year statute of limitation would not bar the assessment because another exception applied. Accordingly, the Comptroller urged that he was entitled to summary judgment regardless of where the transaction occurred. When presenting this argument, the Comptroller contended that if the sale occurred in Texas, CMB would have been required to file a sales-tax report. Although the Comptroller acknowledged that CMB did file a report, he argued that the statute of limitations does not apply in circumstances where a report is filed if "the taxpayer files a false or fraudulent report" "with intent to evade the tax." Tex. Tax Code § 111.205(a)(1).[4] After

_____

[4] In his response to the Comptroller's motion for summary judgment and in his brief on appeal, Brown contends that the Comptroller could not properly present as a basis for summary judgment his assertion that the fraud exception to the statute of limitations applied because the Comptroller failed to include that theory in his response to Brown's request for disclosure inquiring about the Comptroller's claims and defenses. *See* Tex. R. Civ. P. 194.2(c) (allowing party to request disclosure regarding "the legal theories and, in general, the factual bases of the responding party's claims or defenses"). As support for this argument, Brown notes that in the Comptroller's response to the disclosure requests, the Comptroller declared that "[t]he assessment was not barred by the statute of limitations because no tax report was filed when the aircraft was acquired." In light of the Comptroller's response, Brown contends that because the Comptroller failed to amend his response to include the "entirely new claim" regarding the fraud exception and because Brown mentioned in

14

highlighting this provision, the Comptroller noted that CMB filed a sales-tax report that listed zero

dollars for total sales and contended that CMB should have instead listed the sale as part of total

his response to the Comptroller's motion for summary judgment that the new claim was not properly disclosed, the district court should have prohibited the Comptroller from introducing evidence or making any argument regarding the fraud exception. *See id.* R. 193.6(a) (stating that, in general, party who fails to amend discovery response in timely manner may not introduce evidence regarding material that was not timely disclosed).

Although Brown asserted in his response that the argument had not been previously made, nothing in the record before this Court demonstrates that the district court made any ruling on that issue or that Brown called to the district court's attention the lack of a ruling. *See* Tex. R. App. P. 33.1(a) (setting out circumstances in which complaint is preserved for review); *see also Holland v. Friedman & Fieger*, No. 05-12-01714-CV, 2014 Tex. App. LEXIS 12892, at *5-6, *16-23 (Tex. App.—Dallas Dec. 2, 2014, pet. denied) (mem. op.) (addressing issue regarding whether trial court properly excluded claim that was not disclosed where party "filed a motion requesting that the trial court exclude [the] evidence" and where trial court ruled on motion). In fact, given that the Comptroller alleged alternative grounds for summary judgment and that the district court's order does not specify the basis on which it made its ruling, the district court might have granted summary judgment on an alternative ground without having to make any specific ruling on the matter.

In a similar argument, Brown contended that the Comptroller did not mention in his response to Brown's request for disclosure that Brown should have paid use tax on the acquisition of the plane because the sale occurred in *Alabama* and, therefore, should not have been permitted to argue that theory for the first time in his motion for summary judgment. *See* Tex. R. Civ. P. 193.6(a). As with his arguments regarding the fraud exception, nothing in the record demonstrates that the district court made any ruling on the request or that Brown informed the court that it had not ruled on his request. Moreover, we note that two months after the Comptroller responded to Brown's requests for disclosure and two years before Brown filed his motion for summary judgment, the Comptroller clarified in his response to Brown's request for production that he was not asserting that CMB failed to file a tax report but that "the purchaser, . . . Brown, failed to file a use tax report." *Cf. id.* R. 193.6(a), (c) (allowing trial court to determine that undisclosed material may still be introduced if there was good cause *or* other party was not unfairly surprised or prejudiced and to grant continuance to allow response to be made or amended).

Regardless, given our disposition in this case, we need not address these issues further. *Cf. Brown v. Nero*, No. 03-14-00231-CV, 2015 Tex. App. LEXIS 9810, at *10-11 n.3 (Tex. App.—Austin Sept. 22, 2015, no pet. h.) (explaining that issues that were not ruled on by trial court may be considered on remand provided that they were not waived); *Doyal v. Texas Dep't of Crim. Justice-Institutional Div.*, 276 S.W.3d 530, 537 n. 6 (Tex. App.—Waco 2008, no pet.) (explaining that trial court may consider on remand discovery issue that was not previously ruled on).

sales and still entered zero dollars for taxable sales if it believed that the transaction was not taxable. Moreover, the Comptroller argued that if CMB had done this, he would have been "on notice of a potentially-taxable sale."**5** For these reasons, the Comptroller urged that the fraud exception applied and prohibited the running of the limitations period. In his response to the Comptroller's motion for summary judgment, Brown argued that if the report filed by CMB was indeed "false or fraudulent," that "should only allow the Comptroller to avoid the statute of limitations in connection with an action filed" against CMB. In addition, Brown argued that there was nothing to suggest that CMB filed the report with the intent to avoid the payment of taxes.

In resolving this issue on appeal, we need not determine whether the filing of a fraudulent tax report by a seller in a taxable transaction under the circumstances present in this case can toll the running of the statute of limitations for collecting delinquent sales taxes from the buyer, *see Davis v. State*, 904 S.W.2d 946, 952 (Tex. App.—Austin 1995, no writ) (explaining that although sellers have legal duty to collect sales tax, "both sellers and buyers are liable . . . for sales taxes"); *see also* Tex. Tax Code § 151.052(a) (requiring seller who makes taxable sale to add sales tax to amount of transaction), because the Comptroller failed to carry his burden of establishing that there are no genuine issues of material fact regarding the applicability of the fraud exception, *see*

---

**5** On appeal, the Comptroller also points to the remaining exception to the statute of limitations, which provides that the statute of limitations is tolled if "information contained in the report of the tax contains a gross error." *See* Tex. Tax Code § 111.205(a)(3), *see also id.* § 111.205(b) (defining "gross error"). In light of this provision, the Comptroller asserts that the limitations period did not run as a result of the report filed by CMB because the report filed by CMB contained a gross error. However, the Comptroller did not present this ground in his summary-judgment motion. *See Yalamanchili v. Mousa*, 316 S.W.3d 33, 40 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (explaining that appellate courts may not uphold summary judgment on ground not presented in motion for summary judgment).

16

Tex. R. Civ. P. 166a(c). For the exception to apply, the taxpayer must have filed a fraudulent or false report "with intent to evade the tax," Tex. Tax Code § 111.205(a)(1), but no evidence was presented regarding CMB's intent when it filed the sales-tax report. Accordingly, a fact issue existed regarding the applicability of the exception.

Having determined that there were fact questions regarding whether the Comptroller's assessment was barred by the statute of limitations, we sustain Brown's first issue on appeal to the extent that he argues that the district court erred by granting summary judgment in favor of the Comptroller on the limitations question but overrule his first issue to the extent that he argues that the district court should have granted summary judgment in his favor on that ground.

**Occasional Sale Exemption**

In his motion for summary judgment, Brown also argued that a statutory exemption to taxation applied, meaning that he was not obligated to pay taxes even if the statute of limitations was tolled. As discussed earlier, the Tax Code exempts occasional sales from taxation. Specifically, the Code provides that "[a]n occasional sale of a taxable item and the storage, use, or consumption of a taxable item the sale or transfer of which to a consumer is made by an occasional sale are exempted from the taxes imposed by this chapter." Tex. Tax Code § 151.304(a). Moreover, the Code explains that, as it pertains to this case, "'occasional sale' means . . . the sale of the entire operating assets of a business or of a separate division, branch, or identifiable segment of a business." *Id.* § 151.304(b)(2). In his motion for summary judgment, Brown argued that the deposition testimony of Holland, who was the vice-president of CMB at the time of the sale; the joint affidavit from Robert Sharpe, who was the owner of CMB, and from Holland; and the undisputed

17

facts discussed above conclusively established that the airplane was the only operating asset for CMB. Accordingly, Brown asserted that the sale of the aircraft fell under the exemption.

In contrast, the Comptroller urged in his motion for summary judgment that the sale of the airplane did not qualify under the exemption because the evidence, including the testimony from Holland, conclusively established that the plane was not a qualifying operating asset. When making this argument, the Comptroller acknowledged that the term "operating assets" is not defined in the Tax Code but noted that one of his promulgated rules defines the term as meaning "tangible personal property used exclusively by the enterprise in providing the product or service but does not mean tangible personal property maintained and used both for general business purposes and by the specific enterprise." 34 Tex. Admin. Code § 3.316(d)(3) (2015) (Comptroller of Pub. Accounts, Occasional Sales; Transfers Without Change in Ownership; Sales by Senior Citizens' Orgs.; Sales by University and College Student Orgs.; and Sales by Nonprofit Animal Shelters).[6] Further, the rule

---

[6] Brown made a specific request in his appellate brief regarding the Comptroller's rule. Specifically, in the event that this Court determines that there is a fact issue regarding whether the airplane is an operating asset, Brown asks this Court to grant his motion for summary judgment, in part, by ordering that "Rule 3.316(d) is not applicable to either the determination of whether an occasional sale has occurred in this case or the taxable results of such factual determination." *See* 34 Tex. Admin. Code § 3.316(d)(3) (2015) (Comptroller of Pub. Accounts, Occasional Sales; Transfers Without Change in Ownership; Sales by Senior Citizens' Orgs.; Sales by University and College Student Orgs.; and Sales by Nonprofit Animal Shelters). When making this request, Brown asserts that the rule does not apply to the sale of a business's operating assets where the business continues to exist, as in this case, after the sale; on the contrary, Brown asserts that the provision applies "only to the sale of an *entire business*."

Although Brown correctly points out that the heading for subsection (d) begins with "Sale of a business," the remainder of the title provides as follows: "or an identifiable segment of the business." *Id.* § 3.316(d). Accordingly, the heading would seem to indicate that the provision also applies to transactions that involve less than the sale of an entire business. More importantly, the text of the rule is consistent with the statutory provisions at issue, and nothing in the text of the

18

provides that "[i]nventory and intangible property are not operating assets for purposes of the exemption." *Id.*; *see also AHF-Arbors*, 410 S.W.3d at 837 (explaining that tax exemptions are construed against person seeking exemption); *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438 (providing that deference to Comptroller's interpretation is appropriate where "there is vagueness, ambiguity, or room for policy determinations").

In light of this definition, the Comptroller urged that the evidence established that the airplane was not "tangible property used exclusively by the enterprise in providing the product or service" because the airplane was the product being sold, because the airplane was purchased for resale but was not sold for years, and because the airplane was used for purposes unrelated to reselling it in the interim. *See* Comptroller Hearing No. 19,708, STAR Document No. 8609H0773A13 (Sept. 8, 1986) (explaining that exemption applies "to items used in the operation of a business, not the items purchased for resale by the business"); *see also Combs v. Chevron, Inc.*, 319 S.W.3d 836, 841-42 (Tex. App.—Austin 2010, pet. denied) (deferring to Comptroller's interpretation in prior

---

rule limits its applicability to the sale of an entire business. *Cf. Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 47 n.4 (Tex. 2015) (explaining that title of statutory section does not limit or expand meaning of statute and carries no weight when plain meaning of statute controls). Specifically, the rule explains that an "occasional sale" is "[t]he sale of the entire operating assets of a business or of a separate division, branch, or identifiable segment of a business. . . . The lease or rental of an identifiable segment does not qualify as an occasional sale." 34 Tex. Admin. Code § 3.316(d)(1). That definition is nearly identical to the language of the statute explaining what an occasional sale is. *See* Tex. Tax Code § 151.304(b)(2), (e). Accordingly, assuming for the sake of argument that we could provide the relief requested by Brown on appeal, that relief would not seem to be warranted because the scope of the portion of the rule at issue is consistent with the scope of the governing statutory provisions and applies in the same circumstances that the statutory provisions do. *See* 34 Tex. Admin. Code § 3.316(d)(1); *see also id.* § 3.316(d)(3) (instructing that definitions contained in provision, including one distinguishing inventory from operating assets, are to be used when making determinations under rule).

19

Comptroller decisions where precedent was reasonable and did not contradict plain meaning of statute or regulation). Similarly, the Comptroller contended that the airplane was inventory. Accordingly, the Comptroller insisted that the sale of the airplane did not qualify for the exemption.

As mentioned above, the parties attached to their motions for summary judgment an affidavit by Sharpe, a joint affidavit by Sharpe and Holland, and deposition testimony from Holland. In his affidavit, Sharpe simply stated, without explanation, that "[t]he aircraft was the only operating asset of CMB." *Cf. Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.) (explaining that affidavit consisting only of conclusions are insufficient to raise issue of fact, that "[c]onclusory statements are not credible or susceptible to being readily controverted," and that "[a] conclusory statement is one that does not provide the underlying facts to support the conclusion"). Similarly, in Sharpe and Holland's joint affidavit, they stated that CMB was formed "to engage in the business of aircraft sales but was unsuccessful and only sold one aircraft during its entire existence," that the aircraft that was sold to Brown "was the only aircraft ever sold by" CMB, that the airplane "was the only aircraft that was ever in the inventory of" CMB, and that the "aircraft was the sole and only and the entire operating asset of CMB."[7]

The deposition testimony of Holland provides contradictory evidence regarding whether the airplane was an operating asset. In his deposition, Holland explained that he originally owned the plane at issue, that he sold the plane to CMB for the purpose of allowing CMB to resell it to make money, that he started working for CMB after the sale, that the nature of CMB's business

---

[7] When filing his motion for summary judgment, the Comptroller attached CMB's application for a sales tax permit. The application explained that CMB is an "aircraft broker" and that its "dealings will primarily be with other brokers, so sales subject to sales tax will be minimal."

was that "[i]t had an airplane it owned for resell," that the primary purpose of the company was to be an aircraft broker dealing with other brokers, that CMB had no other planes at the time of the sale, and that CMB never sold any planes other than the one sold to Brown. In addition, he related that "occasionally someone would come to look at [the plane] to buy it, and . . . there would be a demo flight." He also testified that he would occasionally use the plane for his own business and that his business would pay the fuel costs and some of the maintenance in exchange for being able to use the plane under a rental or lease type of transaction. Moreover, he clarified that the airplane was CMB's only asset, that it was for sale to the public, that it was an operating asset because it was used "in the business of CMB," and that it could also "be construed as an operating asset" because he used it for business purposes. Regarding his characterization of the plane as an operating asset, Holland asserted that he believed that his years of business experience qualified him to identify whether something was an operating asset.

However, Holland also admitted that he was not an accountant and that he had never previously looked at the issue of whether something qualified as an operating asset "in any kind of detail." Regarding his use of the plane, Holland conceded that there was no formal agreement and that he did not directly pay CMB for the use of the plane.[8] In addition, he testified that the plane was

---

[8] In his brief, Brown argues that the testimony from Holland regarding his use of the plane under a lease agreement established that the sale of the airplane was exempt as an occasional sale. As support for this proposition, Brown points to a prior decision by the Comptroller in which the Comptroller determined that the transfer of an airplane qualified as an occasional sale. *See* Comptroller Hearing No. 33,451, STAR Document No. 9611755H (Nov. 12, 1996). However, we believe that Brown's reliance on the prior decision is misplaced. In the prior case, the administrative law judge explained that although inventory items do not typically qualify for an exemption, "'big ticket' items (such as airplanes or drilling rigs), purchased under a resale certificate for purposes of leasing to customers in the normal course of business" are not necessarily precluded from the

never leased out or used for any type of business activity, and he related that CMB's tax return for the year of the sale revealed that CMB had no income that year. Finally, when describing the amount that the plane was used, Holland stated that it was generally parked at an airport in a lot where he stored his airplanes, that it was not "flown very much at all," that "it would go for six months or so without flying at all," and that he viewed the airplane "as an inventory item."[9]

In light of the preceding, including the definition from the Comptroller's rule, we must conclude that there is a fact issue regarding whether the sale of the aircraft qualified as an occasional sale. *See* Tex. Tax Code § 151.304(b)(2). Accordingly, we sustain Brown's second issue on appeal to the extent that he asserts that the district court erred by granting summary judgment in favor of the Comptroller regarding the applicability of the occasional-sale exemption but overrule Brown's second issue to the extent that he argues that the district court failed to grant his motion for summary judgment on that ground.

---

"occasional sale exemption" if the taxpayer maintained "books and records reflecting income and expenses directly attributable to its use of that item in the leasing enterprise." *Id.*; *see also id.* (discussing how section 151.055 of Tax Code indicates that sale of item purchased initially for resale can qualify for occasional-sale exemption). Ultimately, particularly in light of the fact that "all income from the leasing of the aircraft was ascertainable" from the company's records, the administrative law judge determined that the sale of the plane qualified as an occasional sale. *Id.* However, as discussed above, the evidence presented by the parties in their motions for summary judgment in this case did not conclusively establish the existence of a lease agreement or its terms. In fact, Holland testified that he did not pay CMB any money when he used the plane. Although Holland testified that he paid for gas, for inspections, and for maintenance when he used the plane, he clarified that he paid "whoever did the maintenance."

[9] During his testimony, Holland stated that there were no items listed as inventory in CMB's income tax return for the year that the plane was sold, but he also testified that the same was true for the years leading up to the year that the plane was sold to Brown.

22

**CONCLUSION**

Having determined that there are fact issues regarding whether the statute of limitations bars the tax assessment at issue and regarding whether the occasional-sales exemption applies, we reverse the district court's judgment granting summary judgment in favor of the Comptroller on those issues and remand for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Reversed and Remanded

Filed:   December 3, 2015